105  439
117  944

## No. 13,679.

### NEW IBERIA RICE MILLING COMPANY, LIMITED, vs. HONORE ROMERO.

#### SYLLABUS.

1. A written instrument, purporting to embody an agreement concerning a matter not required to be in writing, which bears the signatures of the party of the one part only, has, of itself, no binding effect as to the party of the other part, who has not signed, but the fact that the latter has entered into the contract may be shown by his execution thereof, with the concurrence of the former.

2. A contract whereby a company engaged in furnishing water to rice farmers by irrigation, acquires the right to conduct such water by means of a canal or ditch through one farm to another does not impose a real servitude on the farm through which the water is conducted.

3. A mandatory writ of injunction may issue *ex parte,* or without a hearing on the merits, in some cases, as for instance, where a prohibitory writ issues, restraining one from obstructing the exercise of a right, the obstruction may be commanded to be removed because its continuance inflicts the injury which is prohibited.

4. The defence that a private corporation, suing on a contract, has no standing in court because the making of such contract was *ultra vires* of the corporation, will not be considered if suggested for the first time in the argument. It should be specifically set up in the pleadings.

APPEAL from the Nineteenth Judicial District, Parish of Iberia—*Foster, J.*

*Walter J. Burke & Bro.,* for Plaintiff, Appellee.

*Andrew Thorpe* and *Voorhies & Voorhies,* for Defendant, Appellant.

The opinion of the court was delivered by

MONROE, J.    Plaintiff alleges that it owns an irrigating canal extending from Bayou Teche to the rear country, by means of which it furnishes water, at a fixed price, to persons engaged in the cultivation of rice upon lands contiguous to said canal.    That it is under contract to furnish water to various parties "through and by means of this canal, "which transfers (traverses?) a section contiguous to the rice field of "Honore Romero, a resident of this parish, and extending beyond his pro-"perty.    That said irrigating canal is constructed upon a right of way ex-"tending from Bayou Teche  to its extreme limits considered (conveyed) "and granted to the petitioners by the various owners through whose "lands the said canal traverses  *  *  *, that at a point in said canal "proximate to the rice field of Honore Romero, the said Honore Ro-"mero without legal right or a warrant has dammed said canal so as to "prevent the water flowing therein to go beyond his own fields, to the "extreme prejudice of all rice lands depending upon this canal for their "irrigation and to the great and irresponsible (irreparable) injury of "petitioner  *  *  *; that the damming of said canal, preventing it "from complying with its contracts with various other parties, would "occasion, if persisted in  *  *  *  injury and damage to the peti-"tioner  *  *  *; that it has repeatedly notified the said Honore Ro-"mero to desist from his wrongful conduct  *  *  *; that it is urgent, "in order that the other rice fields dependent upon this canal for water "should not be allowed to suffer, that said dam should be moved at "once, and said Romero injoined and prohibited from continuing his "wrongful conduct."

The petition further alleges that the defendant has acted maliciously and has inflicted actual loss and injury on petitioner, and prays for an injunction, both mandatory and prohibitory, commanding said defendant immediately to remove the dam constructed by him and prohibiting him from placing any other in said canal or from otherwise obstructing the same; and the injunction was issued accordingly, and was obeyed by the defendant who removed said dam and has not since obstructed said canal.

Thereafter, the defendant answered, as follows, to-wit: He denies

Rice Milling Co. vs. Romero.

generally the allegations of the petition, except as otherwise admitted, and specially denies having dammed the canal used by plaintiff for irrigation purposes as described in the petition. But he alleges that he had dammed a ditch, which is his property and is on his own lands, and which had been used by him for drainage purposes, and which had, at no time, with his knowledge or consent, been selected, under any contract with plaintiff, to serve as an irrigating canal, or as any outlet for the irrigating canal constructed by the plaintiff. He further alleges that the injunction issued improvidently, and he prays that it be dissolved with damages.

- The evidence shows that the defendant, together with his brother, O. P. Romero, and his neighbor, Ovide Landry, and others, signed a document, which was produced and filed in evidence by the plaintiff, and which reads as follows, to-wit:

"NEW IBERIA, LA., Oct. 28, 1899.

" This shows that the New Iberia Rice Milling Co., Ltd., of New
" Iberia, La., will construct an irrigating canal, the pumping plant to
" be located on the Bonin plantation, and that we, the undersigned,
" bind and obligate ourselves to plant and cultivate rice, in the number
" of acres set opposite our names below, and further agree to cultivate
" rice during a term of three years from the date hereof, and to com-
" pensate the said rice milling company by (for) furnishing us with
" water for irrigating our lands by giving two sacks of rice for every
" acre irrigated. All terms, agreements, and rules relating to furnish-
" ing said water to be the same as now in force with other irrigating
" companies in this State. And (we) further agree to give any and all
" rights of way for said main canal and for lateral ditches across our
" lands to furnish water to parties beyond our respective lands.

"(Signed)   O. P. ROMERO, 150 acres.
"H. ROMERO, 125 acres.
"L. C. DUBOIN, 150 acres.
"OVIDE LANDRY, 100 acres.
"S. LeBLANC & BRO., 200 acres.
"ROBERT WILKIN,
"WILLIAM NEWMAN, 75 acres."

At a date which we understand to have been subsequent to that borne by this instrument the plaintiff excavated a canal running out from Bayou Teche at a right angle to the course of the bayou, approximately, South,

for a distance, judging from the sketch which is in evidence, of about thirty arpents, at which point it branches into what may be called two forks, the one running, approximately, West, for a short distance and then resuming a Southerly course; and the other making a short turn to the East, and then, also resuming the Southerly course, so that the two forks, after resuming the original course of the main canal, run parallel with each other, and are separated by the property of Ovide Landry, the fork on the Southern side of said property being the one concerning which this controversy has arisen.

The evidence leaves it in doubt as to whether the line between the property of Landry and that of H. & O. P. Romero runs through the middle of this fork, but, so far as it goes. rather indicates that such is the case. And it is established beyond controversy that said fork existed as a drain before the plaintiff began operations, and that the defendant co-operated with the plaintiff's superintendent and representative when the latter undertook to do the work necessary to convert it into an irrigation canal, and that a slight change was made in its course at his suggestion. It also appears that plaintiff, as part of its plan of irrigation, has a dam in said fork about midway between the line separating the defendant's property from that of Leitmeyer, on the north, and the line between defendant's property and that of his brother, O. P. Romero, on the south, and that the water supply for the use of O. P. Romero is intended to go over, and does go over, said dam, but that the defendant built the dam which is here complained of on his southern boundary, and in such a manner as to cut off O. P. Romero's supply, and that O. P. Romero complained that he was not getting the water to which he was entitled under his contract with the plaintiff. During the trial of the case, the defendant did not take the stand, and but little testimony was offered on his behalf. He has, however, appealed from a judgment perpetuating the injunction as issued.

### OPINION.

The propositions upon which the defendant's counsel rely will be stated and considered *seriatum*:

#### 1.

That the plaintiff alleges that the defendant had *"at a point proximate to his field"* dammed, without right of legal warrant, the irrigating canal of the plaintiff corporation, used by it to furnish water to

Rice Milling Co. vs. Romero.

various parties for the cultivation of rice, "and that in support of this allegation, the plaintiff was permitted to show, not that the irrigating canal had been dammed at a point proximate to defendant's field, but that defendant had dammed a ditch on his own property and at a point several arpents distant from the canal described in the petition."

There is no merit in this complaint. That which had been a "ditch" had been converted by the plaintiff, with the knowledge and concurrence of the defendant, into an irrigating canal. As to the location of the dam, the plaintiff does not undertake to say whether it is on defendant's land or not. The allegation is that "at a point in said canal proximate to the rice fields of Honore Romero * * * has dammed said canal, etc." This averment does not suggest that the canal is not on the defendant's property, but merely that the dam is near his rice fields, which is not denied.

## 2.

It is said that a written document containing propositions from one party to another is not binding as a contract until accepted either expressly or impliedly. This is a sound proposition, but finds no application to this case. If no evidence had been introduced except the written instrument bearing the signatures of the rice growers, but unsigned by the plaintiff, the latter would, necessarily, go out of court. But the evidence shows that the plaintiff has done what it was called upon by that instrument to do, with the knowledge and concurrence of the defendant and has thereby accepted the contract as expressed in said instrument.

## 3.

It is also said, "a permit to use a ditch for certain purposes and the right of way for that purpose is a real servitude" and cannot be established by parol evidence. No doubt if such a permit is granted and imposed as a burden upon one estate in favor of another estate it becomes a real servitude. But, where a business corporation, owning no real estate, but for the purposes of its business, acquires, by contract, the right to use such ditch, the right so acquired no more resembles a real servitude than does that of a lessee, who, by virtue of his lease, acquires the right to use the entire property.

## 4.

The objection is urged that the mandatory injunction should not have issued, save after hearing on the merits. The injunction was is-

sued on June 18th, 1900, and, as the case is yet to be disposed of, it is evident that if the rule invoked had been applied the injury which the mandatory order was intended to ward off, *i. e.* the destruction of the rice crops which were dependent upon the dammed up water would long since have been sustained. This court has been confronted with similar situations upon one or two occasions, and has been called upon to determine whether, in such cases, the writ of injunction may not be used to stay a threatened injury, by compelling the doing of some thing necessary for that purpose, as well as by prohibiting that which, if done, would inflict the injury, and the question has been decided in the affirmative. In McDonough vs. Calloway *et al.,* 7 R. 442, it appeared that the defendants had fenced an alley, the use of which was common to the plaintiff, and the latter applied for an injunction ordering the demolition of the fence and enjoining defendants from disturbing him in the free use of the alley. The trial judge issued an injunction, on bond, restraining the defendant from disturbing the plaintiff, but containing no order to do anything. A few days later, the plaintiff ruled the defendants to show cause why they should not be punished for contempt and why the obstruction complained of should not be removed at their expense. The judge held that as the defendants had done no act since the issuance of the injunction they were not guilty of contempt, and that he could not order the demolition of the obstruction until he had heard the parties on the merits. And the plaintiff appealed. It was said in this court:

"By the *prima facie* case presented by the plaintiff he shows that he "is the owner of a lot having a front of more than one hundred feet on "a way, or passage, laid off more than twenty years previously as common; that without its use there is no ingress or egress to or from the "houses on said passage, and that the occupants cannot get in or out; "that the defendants, without any legal authority, have fenced up and "obstructed said passage, and that those obstructions continue to the "injury and inconvenience of the plaintiff and his tenants, who are deprived of the free use of the property."

A motion was made to dismiss the appeal on the ground that it had been taken from an interlocutory order, and that the injury was not irreparable, but the motion was denied. And in passing upon the merits, the court said: "The law has not left parties remediless in such cases, nor the courts powerless for the correction of such evils, and we think

the judge below should at once have granted an order to have the obstruction to the use of the common passage removed by the sheriff."

This ruling was categorically affirmed in the case of Pierce vs. City of New Orleans, 18 Ann. 242, in which the plaintiff complained that the city had caused certain openings to be made in a wall held in common and prayed that it be ordered to close them. Referring to the case of McDonough vs. Calloway (*supra*), the court, through Mr. Justice Illsley, said: "It is true that in the case just referred to, the nuisance com-
"plained of was rather of a public than private nature, but from the
"whole tenor of the opinion pronounced in that case by the court, it is
"evident that such a case as the one at bar would come, under the rules
"of law, within the scope of the principles therein contained."

In State *ex rel*. Yale *et als*. vs. Judge, 41 Ann. 516, it appeared that relator's "Home" plantation had enjoyed a servitude of drain over the "Arlington" plantation, owned by J. P. St. Martin, and relators had built levees and established a draining machine with reference to the enjoyment of said servitude. That being the situation, St. Martin obtained an injunction, prohibiting the use of said machine, which injunction was released on bond, upon the application of the relator. Thereupon, St. Martin built a levee in front of the machine, so as to prevent its effective operation, and the relator applied for an injunction "prohibiting and restraining the defendant, St. Martin, from disturb-
"ing them in the free use and enjoyment of the right of drain through
"the 'Arlington' plantation to the Bayou Joe Rose, coupled with a
"prayer for an order commanding the sheriff to demolish and remove
"the obstructing levee". This order the judge refused to make save after hearing St. Martin upon a rule *nisi*, and the relators then applied to this court for a writ of *mandamus*.

It was held that it was the absolute duty of the district judge to have issued the prohibitory injunction as prayed for, and the court, through Mr. Justice Fenner, then said: "We consider that the additional order "prayed for, to remove the levee which operates the disturbance, was a "natural and necessary corollary and concomitant of the injunction "against disturbance." And, after referring to the case of McDonough vs. Calloway, and other cases, the opinion proceeds as follows, to-wit: "The later case of Black vs. Good Intent Co., 31st Ann., reviewed "McDonough's case above cited, and, as we understand the decision, "approved and confirmed it, as an exception to the general rule, ex-
"pounded in the body of the opinion, that the writ of injunction, in the

" mandatory form, cannot be issued on an *ex parte* application, but only
" after hearing   *   *   *.   In the instant case, it was the clear duty of
" the judge to grant the prohibitory injunction prayed, and the conse-
" quent duty to order the removal of the obstruction arose simultan-
" eously."   And the doctrine thus affirmed was re-affirmed in State *ex
rel.* Syndic vs. Judge, 41 Ann. 557.

### 5.

The suggestion is made, in argument, that the plaintiff corporation
was established for the purpose of milling rice and that contracts for
the supplying of water for the irrigation of rice lands are, therefore,
*ultra vires,* and hence, that the president of the corporation has no right
to use the corporate name for the purposes of this suit.   These are
questions which should have been raised in the pleadings.

Judgment affirmed.

Rehearing refused.