On the Merits.
[5] Considering the case presented in its appealable aspect (that is to say, with reference to the right of the appellant to have the judgment appealed from reviewed in so far as it denies the mandatory injunction to compel defendants to restore the status established by the prohibitory injunction, and which defendants have changed, in violation of that writ), we find it to be well established under our law and jurisprudence, and to be a rule of well-nigh universal acceptance that, where the status intended to be preserved by a prohibitory injunction is changed or disturbed by the defendant, in violation of that writ, such defendant may be compelled, by a mandatory injunction, to restore it; in fact, the authorities hold that a mandatory injunction will, in some cases, issue preliminarily and ex parte, and not only to restore a pre-existing status, but to compel affirmative action in the establishment of a status which should have existed. Thus in High on Injunction (4th Ed.) vol. 1, it is said:
“Sec. 2. * * * And while a court of equity is always reluctant to grant a mandatory injunction, upon an interlocutory application and before final hearing, it may yet do so in an extreme case, when the right is clearly established and the invasion of the right results in serious injury. * * * TNote to above.] In. Toledo, A. A. & N. M. R. R. Co. v. Pennsylvania Co. [C. C.] 54 Fed. 730 [19 L. R. A. 387], Judge Taft uses the following language: ‘The office of a preliminary injunction is to preserve the status quo until, upon final hearing, the court may grant full relief. Generally this may be accomplished by an injunction prohibitory in form_, but it sometimes happens that the status quo is a condition, not of rest, but of action, and the condition of rest is exactly what will inflict the irreparable injury upon ecmplainant, which he appeals to a court of equity to protect him from. In such a case courts of equity will issue mandatory writs before the ease is heard upon the merits.
“See. 5. A. Since the object of a preliminary injunction is to preserve the status quo, the court will not grant an order where its effect would be to change the status. * * * And by status quo, which will be preserved by preliminary injunction, is meant the last, actual, peaceable, uncontested condition which preceded the pending controversy, and equity will not permit a wrongdoer to shelter himself behind a suddenly and secretly changed status, although' he succeeded in making the change before the hand of the chancellor actually reached him. And where, before the granting of the injunction, the defendant has thus changed the condition of things, the court may not only restrain further action by him, but may, by preliminary mandatory injunction, compel him to restore the subject-matter of the suit to its former condition, and in so doing the court acts without any regard to the ultimate merits of the controversy.”
In McDonogh v. Galloway, supra, a prohibitory injunction having been issued against an existing obstruction to a passageway, common to the adjoining proprietors, the plaintiff, before the hearing on the merits, applied for a mandatory injunction to compel the defendant to remove the same; and, the application having been refused, he appealed to this court, where the appeal was sustained, and it was held (quoting from the syllabus):
“An injunction may be directed to parties or to public officers to compel them to do certain acts, as well as to restrain them from acting. It is as effective to enforce a right as to prevent a wrong.” 7 Rob. 442.
In Pierce v. City of New Orleans, 18 La. Ann. 242, a rule was taken on the city of New Orleans requiring it to show cause why it should not be enjoined and ordered to close up certain openings made by it in a *1062 wall held in common; and, the rule having been made absolute during the pendency of the suit, the city appealed to this court, where it was said:
“There is a sufficient showing in the plaintiff’s petition to entitle him to the equitable interference of the courts; but what we have to determine now is whether pendente lite, and before a trial on the merits, an order should be granted directing the performance of, as well as the restraining from, an act.”
The court then refers to certain English cases holding the contrary, and, affirming the doctrine enunciated in McDonogh v. Calloway, concludes that the order was properly granted.
In Black v. Good Intent Tow Boat Co., 31 La. Ann. 497, the court, construing the decision in McDonogh v. Calloway to mean that, where one is enjoined from obstructing a passageway, his maintenance of an existing obstruction is a violation of such injunction, approved the doctrine that a mandatory injunction directing the removal of the obstruction may in such case issue before a hearing on the merits; and it distinctly held that:
“A prohibitory writ having issued, restraining a party from obstructing the exercise of a right, the obstruction may be commanded to be removed because its continuance effects the very injury he was prohibited from effecting.”
In State ex rel. Yale et al. v. Judge, 41 La. Ann. 516, 6 South. 512, it appeared that J. E. St. Martin had obtained an injunction prohibiting the relators from operating a draining machine which threw drainage from their plantation upon his, and that relators obtained the dissolution of the writ on giving bond; that St. Martin built a levee in front of the machine, thereby destroying the effect of its operation; that relators thereupon applied for a prohibitory injunction restraining St. Martin from disturbing them in the free enjoyment of the right of drain through his plantation, and for a mandatory injunction or order commanding
the sheriff to remove the obstructing levee,, which applications were denied, whereupon relators applied to this court for a writ of mandamus, which was granted, directing the judge to issue the writs as prayed for.
After • referring to the prohibitory injunction as falling under O. P. 298, “and others similar,” the court said as to the duty of the trial judge in the premises:
“Therefore, as to this part of the relief asked his absolute duty to grant it was beyond dispute.”
And the opinion proceeds:
“We consider that the additional order prayed for to remove the levee which operates the disturbance was a natural and necessary corollary * * * of the injunction against disturbance. The law in express terms authorizes the injunction when ‘the defendant disturbs the plaintiff’ in the possession of his real right. It is granted as a remedy for actual, as well as threatened, disturbance. It contemplates an effective relief, and manifestly the injunction would be brutum fulmen if the obstruction, * * * complained of and enjoined were permitted to remain and thus to paralyze its effect and to perpetuate the disturbance which the injunction forbids. The case is on all fours with that of McDonogh v. Calloway, 7 Rob. 442.”
In Rice Milling Co. v. Romero, 105 La. 439, 29 South. 876, plaintiff complained that defendant had dammed its irrigating canal, and prayed for an injunction, prohibitory and mandatory, which was issued accordingly, and obeyed. As part of his defense, defendant urged that the mandatory injunction should not have issued until after a hearing on the merits, but this court said:
“The injunction was issued on June 18, 1900, and, as the case is yet to be disposed of, it is evident that, if the rule invoked had been applied, the injury which the mandatory order was intended to ward off (i. e., the destruction of the crops, which were dependent upon the dammed up water), would long since have been sustained.”
And the writ was sustained.
In 22 Cye. p. 742, we find:
“2. * * * And a mandatory injunction may be granted although the act causing the injury has been completed before the suit is *1064 brought. The complainant may by this means be put in statu quo. * * * Where defendant has fully completed the act sought to be restrained, after the filing of the bill but before the issuance of any order or decree, the court has power to compel, by mandatory injunction, the restoration of the former condition of things.”
Plaintiff herein having been in possession for more than a year of the land upon which its spur track is built, and its possession having been disturbed by defendants, the matter of the issuance of the prohibitory injunction was not within the discretion of the district court, but was compulsory (State ex rel. Yale et al. v. Judge, supra), and the court was as much bound to maintain and enforce as to issue it; the manner in which that may be done being prescribed by law. Article 308 of the Code of Practice (as amended and re-enacted by Act 77 of 1896) provides that:
“ * * * The court may either cause to be destroyed whatever may have been done in contravention of the injunction, if it be practicable, or they may punish him by an imprisonment not exceeding ten days, but which may be repeatedly inflicted, until the party obeys the mandate of the court.”
And article 636 provides that:
“When the judgment orders * * * the doing * * something specified in it, if the party condemned, on demand made by the sheriff that he shall comply with it, refuses or neglects to do so, * * * the party in whose favor the judgment was rendered may obtain, on motion, an order to distrain all the property movable and immovable of the party in default, until he shall have fully satisfied the judgment.”
[6] The judge a quo must have found that defendants had disturbed the status intended to be preserved by his prohibitory injunction, and, having imposed a fine upon the defendant company for its disrespect in failing to obey that writ, he should, we think, have gone farther and ordered the defendant company and its president, through whom it acted, and to whom also the writ was directed, to restore matters to the condition in which they were when the writ was issued, at least to the extent of the disturbance for which they were responsible. It may be, however, that, though he heard the witnesses testify, he was uuable to determine, with reasonable certainty, the character and extent of what we may call the depredation committed by - the defendants, which they should be compelled to repair. At all events, having only an exceedingly imperfect report of the testimony to rely on, we find ourselves in that dilemma, and have concluded to remand the case in order that the facts may lie more intelligibly presented, and a basis thereby established upon which to rest a definitive judgment. As to defendant’s foreman (Blackman), it would probably be out of his power to obey an order such as plaintiff prays for; but if he knew that the injunction was pending, whether it was served on him or not (which we are inclined to think was the case), some effective action should be taken to compel him to respect it, since plaintiff is entitled, for the protection of its rights, to something more than an empty order which no one is compelled to obey, and a court of justice, for its own credit and the credit of the state, should make no order which it is unwilling to enforce to the extent of its power.
Eor the reasons thus assigned, it is ordered and adjudged that the judgment appealed from be set aside in so far as it rejects the application of the plaintiff for a mandatory injunction, and that the case be remanded to the district court for such evidence as the parties may see fit to offer as to any acts committed by the defendant company, its officers, agents, or employes, on and after July 1, 1912, which may have damaged plaintiff’s right of way, roadbeds, or tracks, and as to the character and extent of such damage. It is further decreed that the defendant company and F. H. Drake pay all costs.