J. A. ODEN ET AL. v. M. F. BARBEE ET AL.

No. 2147.  Decided June 15, 1910.

**1.—Injunction—Organization of County.**

Injunction is the proper remedy for preventing, at suit of citizens of an unorganized county, its illegal organization.  (Pp. 450–452.)

**2.—Same—Election—Injunction—Jurisdiction of District Court.**

The Commissioners Court of an organized county, having ordered an election for the organization of a county attached to it for judicial purposes, at a subsequent meeting attempted to rescind its order, discovering that the petition was not signed by the necessary number of qualified voters—women, children and citizens of other states having been added to make the number.  Held, that injunction was properly issued by the District Court at suit of citizens and taxpayers of the unorganized county, to restrain the holding of such election by the officers designated therefor.  (Pp. 450–452.)

**3.—Same—Constitution—Case Distinguished.**

The amendment to the Constitution (art. 5, sec. 8) adopted Sept. 22, 1891, gave the District Court supervisory jurisdiction over the Commissioners' Court, which it did not possess under the original article.  Hughes v. Dubbs, 84 Texas, 502, distinguished as arising under the original article before amendment.  (Pp. 451, 452.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Castro County.

Oden and others obtained writ of error on a ruling of the Court of Civil Appeals sustaining a judgment of the trial court dissolving an injunction.

*Madden, Trulove & Kimbrough,* for plaintiffs in error.—Injunction is the proper remedy for preventing the illegal organization of a county.  Bradley v. Commissioners, 2 Humph., 428, 37 Am. Dec., 563; Ford v. Falmer, 9 Humph., 152; Segars v. Parrott (S. C.), 30 S. E., 273; 11 Cyc. of Law and Proc., 364.

The Court of Civil Appeals erred in holding that the question of appellants' right to relief by injunction in this case is foreclosed against them by the case of Hughes v. Dubbs, 84 Texas, 502.  An examination of Hughes v. Dubbs will show that Hansford County had been completely organized and the thing actually sought in that suit was to restrain by injunction the officers of the county as organized (whether de jure or de facto is immaterial) from performing their functions.  In holding that this could not be done, the court had no right to go further and decide that in no case could a citizen and taxpayer of an unorganized county maintain an injunction to prevent the illegal and wrongful organization of the county, and any expression to that effect must be treated as obiter.  Hence, we urge that the question is res integra in this State, and the court is at liberty to follow and should follow the current of authority upon that question as it has been decided in other jurisdictions.  11 Cyc., 364; Bradley v. Commissioners, 2 Humph., 428, 37 Am. Dec., 563; Ford v. Falmer, 9 Humph., 152; Segars v. Parrott, 30 S. E., 273,

We particularly commend to the court the Tennessee case of Bradley v. Commissioners as a strong, well-reasoned one, exhibiting in the plainest manner most cogent and unanswerable reasons for restraining the illegal organization by injunction rather than permitting the illegal organization to take place, then resorting to quo warranto proceedings to dissolve it. In connection with these authorities we also ask the court to refer to the cases of Caruthers v. Harnett, 67 Texas, 127; Nalle v. City of Austin, 21 S. W., 375, 377-8; Callaghan v. Tobin, 40 Texas Civ. App., 441, and City of Austin v. McCall, 95 Texas, 577.

*Knight & Slaton,* for defendants in error.—The court did not err, as far as it went, in dissolving the injunction, because it is the law in Texas that the order of a Commissioners' Court, ordering the organization of a county and ordering an election to be held for county officers, is a conclusive ascertainment and determination of the facts authorizing the county to be organized, including the determination that the number of qualified petitioners signed the petition. Scarbrough v. Eubank, 93 Texas, 106; Word v. Schow, 29 Texas Civ. App., 120; Townsen v. Mersfelder, 49 Texas Civ. App., 289; Robinson v. Wingate, 36 Texas Civ. App., 65.

Neither a citizen, taxpayer nor qualified voter of an unorganized county has such interest in the proposed organization of such county as will form the basis of a suit and permit him to maintain an action to prevent the organization of such county. Hughes v. Dubbs, 84 Texas, 502; Townsen v. Mersfelder, 49 Texas Civ. App., 65.

That clause of sec. 8, art. 5, of the Constitution, giving the District Court appellate jurisdiction and general supervisory control over the Commissioners' Court is not self-executing and, in the absence of some statutory provision, is not authority for the District Courts to revise the orders of the Commissioners' Courts in a suit by injunction. After the close of a term of the Commissioners' Court an order made by said court during said term is beyond the power of the court to modify, rescind or annul. Chambers v. Hodges, 3 Texas, 517; District School Trustees v. Wimberly, 2 Texas Civ. App., 404; Robson v. Byler, 14 Texas Civ. App., 375; Freeman on Judgments (3d ed.), sec. 121.

The order of the Commissioners' Court in organizing Bailey County and the order of the county judge ordering an election of county officers in Bailey County were final and conclusive, because the law has provided no method by which either of these orders may be revised. State v. Goowin, 69 Texas, 55.

MR. CHIEF JUSTICE GAINES delivered the opinion of the court.

This action was brought by J. A. Oden et al., alleged citizens of Bailey County, to enjoin an election for the organization of said county, which had been attached to Castro County for judicial purposes. It is alleged that on the 10th day of May, 1909, the Commissioners' Court of Castro County upon a petition signed by John Wilterding and others, asking for an election to organize Bailey County, ordered such election to take place on the 19th day of June,

1909, and for the election of a county site and all county officers. It was also alleged that of the signers to the petition for the election less than fifty were qualified voters of Bailey County and that the remaining signers were women and children and citizens of Kansas and Nebraska, whose names were given. As alleged, the purpose of C. A. Colden, Charles Johnson and others, who procured the order for the election, was to elect Hurley the county site of the county and thereby enhance the value of the lands in that vicinity. It was also alleged that the Commissioners' Court of Castro County adjourned their court before discovering the fraud, but after the adjournment of the court they became aware of it, and becoming apprized of it, on the 2d day of June, 1909, they called a special meeting and undertook to annul the order for the election rendered on May 10 theretofore. But it was also averred that notwithstanding the annulment of the order of May 10, 1909, the election of officers designated by such order was proceeding, and if not restrained an election would be held and establish the· county of Bailey, which would result in · burdensome taxation upon the petitioners.

The trial court upon exceptions to the petition and a motion to dissolve, dissolved the injunction insofar as it restrained the parties from holding the election for the organization of Bailey County, but continued in force said injunction insofar as it prohibited the Commissioners' Court and the county judge of Castro County from receiving the returns of said election and declaring the result, and issuing commissions to any officer found to be elected.

The relators appealed and the Court of Civil Appeals following the case of Hughes v. Dubbs, 84 Texas, 502, held that the restraining order was rightfully dissolved. It is to be noted that Hughes v. Dubbs arose under a state of facts which occurred before the adoption of the amendment to the Constitution, which was declared adopted September 22, 1891, and that the case was tried as shown by the transcript which we have before us on the 12th day of April, 1889. It is apparent therefore that the amendment of September 22, 1891, cut no figure in the case. In Ex parte Towles, 48 Texas, 413, Chief Justice Roberts says: "The Constitution gives the District Court no general supervising control, by writ or otherwise, over the proceedings of the Commissioners' Court, or any other such courts or inferior tribunals." This was the law at the time the Towles case was decided. But by an amendment to section 8 of article 5 of the Constitution, which was declared adopted September 22, 1891, the following was inserted in that section: "The District Court shall have appellate jurisdiction and general supervisory control over the county Commissioners' Court, with such exceptions and under such regulations as may be prescribed by law; and shall have general original jurisdiction over all causes of action whatever for which a remedy or jurisdiction is not provided by law or this Constitution, and such other jurisdiction, original and appellate, as may be provided by law." At the time this amendment was adopted there had been numerous decisions by the Supreme Court holding that a citizen of a county had no remedy by which he could resist the removal of a county site, and the District Court had recently

held that the same rule applied to an election for the organization of a county, namely, that the question was a political and not a judicial one.   It seems to us therefore that the main object in the amendment in question, first by answering the objection so often urged, that the District Court had no jurisdiction over the Commissioners' Court and then by broadly providing that the latter court shall have general original jurisdiction, for which a remedy is not provided by law, was to provide that the District Court should have jurisdiction of these cases.   It occurs to us that it is an insufficient answer to a citizen and taxpayer of an unorganized county who alleges a fraudulent application to the Commissioners' Court of the present county, by the insertion in the petition of the names of women and children and persons not residents of the unorganized county, the granting of the petition, the attempted repeal of· the order, and that notwithstanding such attempted repeal the persons designated to hold the election propose to hold it; and that the result will be to increase ·their taxes—to say that this is a political question and one that is not cognizable by the courts.   What greater wrong can be perpetrated upon the inhabitants of an unorganized county than to organize it without their consent and thus to subject them to the expense of building courthouses and jails and other expenditures necessarily incident to a new organization?

This is not a question of the removal of a county seat, and it may be that if it were the judgment would be correct.   But this is a case in which the people of Bailey County are about to b₃ deprived of their election franchise and to be subjected to the burden of taxation against their will.

Accordingly we reverse the judgment of the trial court and of the Court of Civil Appeals and render judgment for the relators against the defendants in error.

*Reversed and rendered.*