McLAUGHLIN et al. v. SMITH et al.

(Court of Civil Appeals of Texas. Amarillo. Sept. 21, 1911. On Rehearing, Nov. 24, 1911.)

1. MANDAMUS (§ 23*)—RIGHT TO SUE—PROTECTION OF PUBLIC INTEREST.

A citizen may sue out a writ of mandamus to compel the enforcement of a public duty, without showing an interest peculiar to himself, as would be necessary to enforce private rights, so that qualified voters and taxpayers of a county had sufficient interest to sue out mandamus to compel a county comissioners' court to take certain sections of land out of a school district, in which they had been fraudulently and arbitrarily placed by the commissioners in dividing the county into school districts, and permit them to be annexed to an independent school district.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 55–58; Dec. Dig. § 23.*]

2. INJUNCTION (§ 136*)—TEMPORARY INJUNCTIONS—GROUND.

In mandamus to compel the county comissioners' court to take certain sections of land

out of the E. school district, where they had been fraudulently placed by the commissioners in dividing the county into common school districts, and permit them to be annexed to the C. independent district, the petition alleged that E. school district bonds were about to be issued, and would be signed by the county judge and treasurer on a certain day, and that, upon the issuance and sale of the bonds, they would become liens on the E. school district, including the sections sought to be withdrawn, for 30 years, and prayed that the county judge and treasurer be restrained from signing the proposed bonds, and that the commissioners' court be restrained from buying them with county funds until they have been approved by the Attorney General. Rev. St. 1895, art. 2989, as amended by Acts 31st Leg. (1st Ex. Sess.) c. 34, § 1, div. 2, authorizes the district court to issue injunctions in a pending cause when it appears that some act may be done which would tend to render the judgment ineffectual. Const. art. 5, § 8, as amended in 1891, gives a district court general supervisory control over the commissioners' courts, and general original jurisdiction over all causes of action whatever for which a remedy is not provided. Held, that a temporary injunction was properly granted as prayed.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. § 136.*]

Appeal from District Court, Crosby County; W. R. Spencer, Judge.

Petition for mandamus by Gip Smith and others against W. E. McLaughlin and others, in which a temporary injunction was prayed. From an order granting the injunction, defendants appeal. Affirmed.

Cooper, Merrill & Lumpkin, for appellants. J. W. Burton and L. W. Dalton, for appellees.

PRESLER, J. This is an appeal from an order of the judge of the Seventy-Second judicial district granting a temporary injunction against appellants and the appellee John K. Fullingim, which order was granted on the 7th day of September, 1911, in vacation, upon the petition of appellees Gip Smith, Zeb Smith, Charles Perky, J. C. Woody, J. W. Carter, and Julian M. Bassett. The petition alleges that the relators Gip Smith, Zeb Smith, and Charles Perky are property owners and taxpayers in Crosby county, although not residents thereof, and that J. C. Woody, J. W. Carter, and Julian M. Bassett are citizens and qualified voters, as well as taxpayers, of said county. It is alleged that appellants W. E. McLaughlin, R. M. Wheeler, and John Noble, together with appellee John K. Fullingim, are county commissioners of said county, and that appellees R. L. Travis and M. A. Moses, together with the said W. E. McLaughlin, compose the board of trustees of common school district No. 4 of said county, known as the "Emma district." It appears from an inspection of the record in this case that the order granting said injunction herein appealed from was granted in a suit filed and pending in the district court of Crosby county, Tex., on the part of appellees, seeking a mandamus

against appellants W. E. McLaughlin, R. M. Wheeler, John Noble, John K. Fullingim, and Pink L. Parish as members of the commissioners' court of Crosby county, Tex., requiring said appellants composing said court to take certain 24 sections of land described in the petition for said mandamus out of the Emma school district, and leave the same so that they could be annexed to the Crosbyton independent school district, alleging, among other matters, fraud and arbitrary action upon the part of said commissioners or a majority thereof with reference to dividing Crosby county into common school districts, and especially with reference to the matter of providing sufficient territory for the maintenance of public free schools in the Crosbyton independent school district, and that said temporary injunction was granted as ancillary to the main proceeding for mandamus in this case, and for the purpose of rendering the judgment of the court effectual in the event the relief prayed for by mandamus should be granted upon the hearing of appellees' application for the same. Appellants appear to have filed no answer in the court below by way of opposition to the granting of said temporary writ of injunction, but by appeal bond, duly filed, have appealed from the action of said district court in granting said temporary writ of injunction, and here present for the determination of this court the sufficiency of the allegations of appellees' petition to entitle them to the relief prayed for and granted by the order of said district judge, and suggest that this court should render judgment, reversing the cause, dissolving the injunction, and directing the court below to dismiss the bill.

Appellees' petition (or so much thereof as we consider to be material to the disposition of this appeal) is in substance as follows:

The petition alleges that the commissioners' court have charge and supervision of the common school districts of Crosby county for the best interests of the citizens of said county, and hence it was and is their duty to divide the county from time to time into such school districts as will best accommodate the school children thereof, also to lay aside their personal interests, and to conduct their official business to the best interests of the people and citizens of said county, but that, instead of so doing, they have failed to apportion the county with regard to its scholastic population and the needs thereof, and have entered into a combination and conspiracy to control said court in all its actions, regardless of the rights of others, and have used their powers as commissioners to further their own private interests, and have, in the furtherance of such conspiracy, entered into a combination with the Emma school district trustees and others in said district to hinder, obstruct, and impoverish every other school district in

Crosby county, and especially what is known as the Crosbyton community. These allegations of conspiracy and combination, so far as the commissioners' court is concerned, are directed against three of its members only, alleging that they dominate the commissioners' court. It further alleges an intense feeling by said three commissioners against the town of Crosbyton on account of a county seat election. It sets up a request made by the people of Crosbyton to said court for an appropriate common school district, which said request was through the combination and conspiracy above alleged refused by said court. It alleges the district asked for included 24 sections of land immediately south of Crosbyton, said land being the extreme eastern portion of the Emma district; that these sections are owned by appellees Smith and Perky, who desire them attached to the Crosbyton district. It alleges that there are no other lands adjacent to Crosbyton except what is known as the "breaks," which has a low tax value. It is alleged that at the time of such refusal the Emma school district embraced over 200 sections of plains land with 140 scholastics, and at the time of the filing of the petition had but 60 scholastics; that it has a good schoolhouse large enough for 200 pupils; that at the time of such request and at this time the Crosbyton district had no school, except that rented or loaned to it by its public-spirited citizens, and at the time of said request had 92 scholastics and has now 143 scholastics.

The petition alleges that the refusal of the commissioners' court to grant Crosbyton the requested school district was based upon spite and prejudice of said commissioners, and in furtherance of the scheme of said commissioners and people of Emma to obstruct and hinder the growth of Crosbyton, and to further their own private interests. Petition alleges that thereupon the Crosbyton people voted an independent district of 25 sections, which did not include any of the 24 sections mentioned above, and that the 25 sections incorporated as an independent district is inadequate for the school purposes of Crosbyton on account of the large number of children now attending, and that the revenue therefrom is not sufficient to pay interest and sinking fund on sufficient sum of money to build a schoolhouse nor to pay current expenses. The petition sets up a history of the county seat contest, alleging numerous suits instituted by the three commissioners and others against Crosbyton, all of which were decided in favor of Crosbyton, setting up the further fact that the three commissioners bore part of the expense of said litigation and hired the lawyers to conduct said cases, and at one time paying them out of the funds of Crosby county.

Petition further alleges that the people of Crosbyton asked the Legislature at its reg-

ular session in 1911 to increase the territory of its independent district so as to include, among other sections, the ones in controversy in this suit, but that through the combination and conspiracy of said commissioners the passage of the bill was delayed and died on the calendar of the House after having passed the Senate; that said delay was occasioned on account of the misrepresentations made by said parties.

Petition further shows that the appellants were then informed that the same bill would be submitted at the special session of the Legislature in 1911, and the petition alleges that the appellants entered into a combination and conspiracy to prevent the Legislature passing the said act, and, in pursuance of such conspiracy, induced the people of Emma to vote bonds for a school to be situated several miles away from the scholastic population of the Emma district, and to cost $15,000. The petition alleges that this was done because it is the law that, when bonds are issued on a certain school district, none of its territory can be cut off because it would reduce the security of the bonds, and it is alleged that this would prevent Crosbyton from obtaining the 24 sections above mentioned, and was done for that purpose purely, in furtherance of the unlawful combination above set out. The petition shows that these 24 sections are not necessary to the Emma district, as since January 1, 1911, it has had only 60 scholastics and has a schoolhouse large enough for 200 pupils; that without said sections the tax for the $15,000 would be less than 12 cents per $100 valuation.

The petition further alleges that said election was held at a time when the Governor of Texas had before him the proposed bill of the Crosbyton people containing these 24 sections; that the Governor did submit said bill to the Legislature in August, 1911, and that W. E. McLaughlin, one of said commissioners, in pursuance of the combination and conspiracy aforesaid, went to Austin and endeavored to defeat said bill; that the bill passed the Senate without a dissenting vote giving Crosbyton said 24 sections; that said bill was then sent to the House, and referred to the committee of educational affairs which committee recommended that it should pass, the full report of said committee appearing in the petition as "Exhibit B"; that said McLaughlin, in pursuance of the combination and conspiracy above referred to, made misrepresentations to the members of said Legislature in order to induce them to vote against same, and so delayed the matter; that said Legislature adjourned before the House could act upon the recommendation of the committee, and it is alleged that, if said misrepresentations had not been made in pursuance of said combination and conspiracy, said bill would have passed the House, and become a law before the close of the Legislature.

The petition alleges that the Emma school district bonds are being prepared to be submitted to the Attorney General for approval, and that the commissioners' court dominated by appellants in pursuance of the unlawful combination and conspiracy are ready to buy up same with Crosby county funds; that said bonds have not been signed by the county judge and treasurer, but that September 9, 1911, had been set as the day for that purpose. The petition further shows that, upon signing and issuance and sale of said bonds, they become liens on the Emma school district, including the 24 sections above referred to, for the term of 30 years, and that in that event the Crosbyton school district and community cannot obtain same, and that it will suffer irreparable injury.

The petition sets up that, unless the county judge and treasurer are restrained, they will sign said bonds; that said 24 sections will bring in $760 for school purposes; that Crosbyton at this time has a population of 800 people, and is by far the largest community in Crosby county, and requires a school building of at least $15,000; that the people of said district are willing to vote bonds for that amount for 20 years; that the interest and sinking fund would be $1,350 a year, current expenses $4,000 a year, making a total of $5,350; that the present revenue is about $3,000. If the Crosbyton district can be increased by these 24 sections and breaks land in vicinity, the revenue can be increased to $5,350; but that, if these 24 sections cannot be included, the district will be short $760 each year. A map of Crosby county is attached to the petition, showing the situation, marked "Exhibit A."

The petition alleges that, if the Emma bond issue is not carried through at this time, it will work no hardship on that district or the pupils therein, as it has now an adequate school building, and another bond election could be had after eliminating the 24 sections in question, and the increase in taxation on the balance of the district per $100 valuation would be less than 2 cents. The petition further shows that, if the Crosbyton district does not obtain these 24 sections, it will be impossible to own a school building, or have sufficient money for current expenses; that the Emma district has over 200 sections in irregular form, whereas no other district in Crosby county has over 25 sections. Said Emma district is 20 miles long from north to south, and surrounds every other district in the county, and the proposed bond issue for 30 years would hinder and obstruct every other district in the county. The petition sets up that the district court according to the Constitution of the state has general supervisory control over commissioners' courts, and prays that the commissioners' court, naming the individuals, be cited to appear at the next regular term of the district court of Crosby county to be held in December, 1911, to show cause why tem-

porary writ of mandamus should not be issued against them commanding them to set off said 24 sections so they may be annexed to the Crosbyton district. The petition also asks that a temporary writ of injunction issue against county judge and treasurer restraining them from signing the proposed bonds until further order of court; that the commissioners' court be restrained from buying said bonds until such time the bonds may have been approved by the Attorney General; that a temporary writ of injunction issue against the trustees of the Emma district restraining them from issuing and selling said bonds until the further order of court.

[1] The first question presented for our consideration in determining this appeal is whether or not the applicants, the appellees herein, or any of them, are entitled to maintain this action. The petition substantially sets up that this is a case against the commissioners' court of Crosby county to compel said court to perform a public duty with reference to apportioning school districts, and that the petitioners are all owners of property in Crosby county, and that three are voters and taxpayers in said county, and, while there is some conflict of authority as to the right of a citizen and taxpayer to maintain a suit for injunction in the absence of a definite and specific showing of some damage peculiar to himself, either actual or threatened, we are constrained to hold that when the question is one of public right, and the object of the mandamus is to procure the enforcement of a public duty, the people ought to be regarded as the real party in interest, and that the relator, at whose instigation the proceedings are instituted, need not show that he has any interest, special and peculiar to himself, in the result, and that it is sufficient to show that he is a citizen and as such interested in the execution of the laws; and, as stated in High on Extraordinary Legal Remedies (3d Ed.) § 431: "As regards the degree of interest on the part of a relator requisite to make him a proper party on whose information proceedings may be instituted, a distinction is taken between cases where the extraordinary aid of mandamus is invoked merely for the purpose of enforcing or protecting a private right, unconnected with the public interest and cases where the purpose of the application is enforcement of a public right, where the people at large are the real party in interest. While the authorities are somewhat conflicting, yet the decided weight of authority supports the proposition that, when the relief is sought merely for the protection of private rights, the relator must show some personal or special interest in the subject-matter, since he is regarded as the real party in interest, and his right must clearly appear."

As before stated, it appearing that at least three of the petitioners in the present proceeding are citizens and qualified voters, as well as taxpayers, in Crosby county, and that the mandamus sought upon their relation in this proceeding is for the purpose of compelling appellants to perform a public duty, we therefore conclude that said petitioners had the legal capacity to maintain said proceeding for mandamus and as ancillary thereto said application for temporary writ of injunction, and that the court did not err in entertaining the same upon their relation. 2 Sayles' Texas Civil Practice, p. 108; Kimberly v. Morris, 87 Tex. 637, 31 S. W. 808; Sansom v. Mercer, 68 Tex. 488, 5 S. W. 62, 2 Am. St. Rep. 505.

[2] Upon the further question here presented as to the sufficiency of appellees' petition to authorize the court to grant the temporary order of injunction herein, we are of the opinion that, as shown from the record, the injunction granted was merely ancillary to the main proceeding in this cause, and to hold matters that might affect the relief sought in statu quo until the main case could be heard by the district court in December, 1911, so that, if said court should grant the relief asked, it would not be ineffectual; the statute conferring upon the district court power to issue injunctions in a pending cause when it appears that some act may be done which would tend to render the judgment ineffectual. Rev. St. art. 2989, as amended by the Thirty-First Legislature (Acts 1909 [1st Ex. Sess.] c. 34, § 1, div. 2). And, while it may be conceded that the appellants (county commissioners of Crosby county) in the matter of dividing and apportioning their county into common school districts and in matters pertaining to said apportionment were acting in the exercise of discretionary power by law conferred upon them, yet in view of the allegations in the petition, charging the fraudulent and arbitrary exercise of such discretionary power, to the injury of the people of the school districts of the county other than the Emma district, and especially of the people of the Crosbyton district, and in view of the other matters and charges alleged against said appellants, and tending, if true, to show a disposition on the part of appellants to deliberately and arbitrarily bring about such conditions as would for a long period of time prevent the people of said Crosbyton district being adequately supplied with a proper district for the support of their public free schools, we do not feel warranted in here holding that the court below erred in granting the order of injunction, and, in view of the further fact that the Constitution and statutes of this state confer upon the district court the power to hear and determine suits for mandamus and to issue writs of injunction to protect its jurisdiction, we are unable to hold that the district judge in the present case was without warrant of law in issuing said injunction, and therefore conclude that said order or judgment here ap-

pealed from should be affirmed; and it is accordingly so ordered.

### On Rehearing.

In deference to the earnest insistence of appellants in oral argument on motion for rehearing in this case, we have carefully considered the record and the questions involved, and for the reasons stated in our former opinion, and under the authorities there cited, we conclude that said motion for rehearing should be overruled. If section 8 of article 5 of the Constitution of this state, as amended in 1891, and as apparently construed by the Supreme Court, Chief Justice Gaines rendering the opinion, in Oden et al. v. Barbee, 129 S. W. 602, is applicable in this case, it would appear therefrom that further support of the conclusions reached by us in our former opinion is found therein.

Motion for rehearing overruled.