JENNINGS, County Judge, et al. v. CARSON. (No. 919.)

(Court of Civil Appeals of Texas. Amarillo. March 15, 1916. Rehearing Denied March 29, 1916.)

1. SCHOOLS AND SCHOOL DISTRICTS ⬅⇒39 — CREATION OF NEW DISTRICTS—REVIEW OF PROCEEDINGS.

Acts 34th Leg. c. 36, amending Acts 32d Leg. c. 26 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 2849a–2849o) § 4, vests in the county board of school trustees the authority theretofore vested in the county commissioners' court, with respect to subdividing the county into school districts and making changes in school district lines. Section 4a gives to the district court general supervisory control over actions of the county trustees in creating, changing, and modifying school districts. Section 8 requires the county school trustees to appoint the county superintendent as their secretary and executive officer, but his duties under the

act are purely clerical and ministerial. Section 10 provides that all appeals from the decisions of the county superintendent shall lie to the county school trustees, and from the said trustees to the state superintendent, and thence to the state board of education. *Held*, that since the duties of the county superintendent are only ministerial and there could be few occasions for an appeal from him, a party aggrieved by the action of the trustees in the matter of the creation or alteration of the districts may seek relief from the court without first exhausting the remedy of appeal to the state superintendent and the board of education.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 68, 69; Dec. Dig. ⊕=39.]

2. SCHOOLS AND SCHOOL DISTRICTS ⊕=36 — CREATION OF NEW DISTRICT—REVIEW—PROCEEDINGS—STATUTE.

Acts 34th Leg. c. 36, § 4a, giving the district court supervisory control of the actions of the county trustees in creating, changing, and modifying school districts, does not authorize the court to compel the trustees to create a new district when they have refused to do so, since such supervisory power is a special power and, even though given to a court of general jurisdiction, must be limited to the grant when strictly construed.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 59½; Dec. Dig. ⊕=36.]

3. SCHOOLS AND SCHOOL DISTRICTS ⊕=39 — CREATION OF NEW DISTRICT — REVIEW OF PROCEEDINGS—CONSTITUTIONAL PROVISIONS.

Const. 1876, art. 5, § 8, as amended in 1891, gives the district court appellate jurisdiction and general supervisory control over the county commissioners' court, and general original jurisdiction over all causes of action whatever for which a remedy of jurisdiction is not provided by the Constitution or laws. Acts 33d Leg. c. 129, § 1 (Vernon's Sayles' Ann. Civ. St. 1914, art. 2815), empowers the county commissioners' court to reduce the area of any school district and create such additional school districts as may be necessary for the best interests of the children, with certain restrictions. Acts 34th Leg. c. 36, transferred this power to the county school trustees. *Held*, that the district court, under the Constitution could supervise the action of the school trustees in refusing to create a new school district, as well as creating or altering one.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 68, 69; Dec. Dig. ⊕=39.]

4. SCHOOLS AND SCHOOL DISTRICTS ⊕=36 — CREATION OF NEW DISTRICTS—REVIEW OF PROCEEDINGS—INJUNCTION.

Where some of the children residing in a territory which it was sought to have created into a new school district were compelled to go seven miles to school, and when the streams were swollen were unable to go at all, and the existing district was about to issue bonds for the construction of a new building, after which, under Acts 33d Leg. c. 129, § 1 (Vernon's Sayles' Ann. Civ. St. 1914, art. 2815), its boundaries could not be changed until the bonds were paid, the district court can issue an injunction restraining the issuance of the bonds, and a mandatory injunction compelling the creation of a new district, notwithstanding the rule which ordinarily forbids a court from interfering with the action of an inferior tribunal, so long as the latter is exercising its constitutional and statutory powers in a lawful manner, in matters calling for the exercise of discretion.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 59½; Dec. Dig. ⊕=36.]

5. STATUTES ⊕=122(1)—TITLE—MEANS TO ACCOMPLISH PURPOSE.

Acts 34th Leg. c. 36, § 4a, giving the district courts general supervisory control of the action of the county school trustees, being a specification of the means whereby the objects of the act expressed in title were to be carried out, is not void because not mentioned in the preamble to the act.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 175; Dec. Dig. ⊕=122(1).]

6. SCHOOLS AND SCHOOL DISTRICTS ⊕=159½ —TRANSPORTATION TO AND FROM SCHOOL—STATUTE.

Acts 34th Leg. c. 36, authorizing the classification of school districts into elementary and high school districts, but providing that the classification shall not be so made as to deprive any child of opportunity to attend a school properly classified within three miles of his home unless free transportation for such child shall be provided, does not authorize the trustees to provide free transportation for children to and from common school districts.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 207; Dec. Dig. ⊕=159½.]

Appeal from District Court, Hemphill County; Frank Willis, Judge.

Suit for injunction by L. M. Carson against J. L. Jennings, as County Judge, and others. Decree for the plaintiff, and defendants appeal. Affirmed.

H. E. Hoover, of Canadian, for appellants. Baker & Willis, of Canadian, for appellee.

HALL, J. Appellee, as plaintiff below, filed this suit in the district court of Hemphill county, against appellant Jennings, as county judge and ex officio secretary of the county school board, including as defendants F. R. Jamison, president of said board, C. A. Gilly, H. T. Holland, Frank Merry, and R. T. Alexander, trustees, constituting the entire board, alleging, in substance, that school districts Nos. 4 and 5 each contained more territory than was required by law, each having their schoolhouse beyond the reach of many children of scholastic age residing therein; that on the 27th day of July, 1915, plaintiff had four children of scholastic age, and, joined by 19 other parties interested in the school affairs of the neighborhood, all residing within the territory of the proposed new district, by written petition to the county board of trustees prayed for the formation of a third district, to be so constructed as to take a strip of territory six miles long and three miles wide from the west side of said district No. 4 and certain territory described in the petition from district No. 5, and that said new district should be numbered 17. It is further alleged that if said new district was created, it would leave ample territory in districts Nos. 4 and 5, with sufficient population to maintain schools, and having schoolhouses easily accessible to the children in the districts as then created; that the trustees to whom the petition was presented, refused to grant the prayer; and that such refusal

was tantamount to a denial of educational opportunities to the children within the proposed new district, which is alleged to be a gross abuse of their power and authority on the part of such trustees. The petition further sets out certain inconveniences to plaintiff, and other residents in the district, suffered on account of the present location of the schoolhouses therein; that a petition is being circulated in school district No. 5, to vote an issue of bonds to the amount of $1,000, for the purpose of building a schoolhouse therein; that if the election is ordered, the bonds will be issued when, under the law, no change can be made in the district. The prayer is that the district court take supervisory control of the action of the county board of trustees in rejecting the petition; that the court exercise its authority and correct the abuse of power on the part of such trustees and enter a decree, forming and establishing a new district, to be numbered 17, for a writ of mandamus, compelling the trustees to create such district, and for an injunction restraining Jennings, as county judge, from calling the election to vote upon the bond issue in district No. 5. A temporary writ of injunction was granted, and at the time ordered by the trial judge the appellants appeared, filing their joint answer to the original petition. The answer consists of a general demurrer and various special exceptions, a general denial and special answer, to the effect that the petition for a new school district was presented to the defendants as a county board; that in acting upon the same they were fully advised of the matters pertaining thereto, and, in the exercise of their discretionary powers, looking to the good of all the people in the district, concluded that it was to the best interest of the majority of the patrons in the district, and to the educational advantages of the children, therein, to reject the petition; that in so doing they acted without prejudice or bias, and in no wise abused the discretion vested in them, and, so acting, saw fit to reject the petition, and that their action was not subject to supervision by the district court. Upon a trial the same day, at a regular term of the district court, without a jury, judgment was entered, forming school district No. 17, perpetuating the injunction, and granting the mandamus prayed for.

[1] Acts 34th Leg. 1915, ch. 36, p. 68, amending Acts 32d Leg. ch. 26 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 2849a–2849o), vests in the county board of trustees all the authority theretofore vested in the county commissioners' court with respect to subdividing the county into school districts and to making changes in school district lines, and to such other matters as pertain to the location, conduct, maintenance, and discipline of schools, the terms thereof, and other matters of interest in school affairs in the county. (Section 4.)

Some of the provisions of this act are confusing. Section 10 provides that all appeals from the decisions of the county superintendent of public instruction shall lie to the county school trustees, and from the said county trustees to the state superintendent of public instruction, and thence to the state board of education. Section 8 of the act requires the county school trustees to appoint the county superintendent as their secretary and executive officer. His duties, under the various sections of the act, are purely clerical and ministerial. All matters requiring the exercise of discretion, and which under previous laws were under the jurisdiction of the county superintendent, are, by this act, vested in the county trustees. Since the county superintendent has no discretionary powers, it is difficult to conceive of any action on his part from which it would ever be necessary for any one to appeal. The amended act did not provide that the district court should have general supervisory control of the actions of the county trustees in creating, changing, and modifying school districts. The amendment, however, has this provision (section 4a), and under it this suit was instituted. Upon original consideration of this case we applied the rule announced in McCollum v. Adams, 110 S. W. 526, to the effect that appellant could not seek relief in the court until his remedy of appeal to the state superintendent and the state board of education had been exhausted. Upon reconsideration we have concluded that by reason of the uncertain provisions of the act, relating to appeals from the county superintendent and the addition of section 4a, giving the district court general supervisory control, it is not necessary, under the facts alleged, to first appeal to the state superintendent and the state board of education, but that in a proper case the aggrieved party may seek relief in the district court; but is this such a case?

[2, 3] The action complained of here is not the action of the board in creating, changing, and modifying districts, but appellant complains because the board refuses to act and to create a new district by changing two existing districts. The power herein conferred upon the district court is a special authority, and the rule, according to the weight of authority, is that where special powers are conferred on the court, either of otherwise or general limited jurisdiction, it is rigorously restricted to those granted, and the grant itself is strictly construed. The court can take no additional power from its general jurisdiction. In the exercise of such special powers it is precisely limited to those plainly delegated. Nothing is to be presumed which is not expressly given. 2 Lewis' Sutherland's Statutory Constr. § 564. The act in question nowhere gives the district court authority to create districts, either originally or in the event of a refusal on

the part of the county board to do so. Under section 4a, the district judge can do nothing more than supervise and control the acts of the county trustees, in the event they undertake to create, change, or modify districts. Therefore, if the district court can, by mandamus, compel the county school trustees to create a new district, as has been done in this case, the authority for such action must be looked for outside of the act in question. This act vests the county school trustees with all the authority heretofore exercised by commissioners' courts, with respect to subdividing counties into school districts and making changes in school district lines, but does not, in express terms, make their decision final. Acts of 1913, p. 259, § 1, Vernon's Sayles' Civil Statutes, art. 2815, empowers the county commissioners' court to reduce the area of any common school district and create such additional school districts as may be necessary for the best interests of the school children, limiting the right of the commissioners, however, to reduce school districts so as to contain not less than nine square miles. By the act of 1915, under which this suit was brought, this authority, as stated above, is transferred to the county school trustees. Article 5, § 8, of the Constitution of 1876 was amended September 22, 1891, and this provision added:

"The district court shall have appellate jurisdiction and general supervisory control over the county commissioners' court, with such exceptions and under such regulations as may be prescribed by law."

This provision is followed by the further statement:

"And shall have general original jurisdiction over all causes of action whatever for which a remedy of jurisdiction is not provided by law or this Constitution."

Our Supreme Court, in Oden v. Barbee, 103 Tex. 449, 129 S. W. 602, held that, under the provisions of the Constitution quoted above, at the request of citizens and taxpayers of the unorganized county, the district court had the right to enjoin proceedings to effect the illegal organization of such county, and that it was no answer to the suit of such citizens to say that it was a political question, and one not cognizable by the courts.

In Stephens v. Buie, 23 Tex. Civ. App. 491, 57 S. W. 312, Judge Raney, in affirming the action of the trial court sustaining a demurrer to a petition instituted against the commissioners' court of Upshur county, to review their action in fixing the boundaries of a school district, says that the trial court was justified in his action because the petition fails to allege that the discretion and control exercised by the commissioners were oppressively, illegally, and fraudulently used, the inference being that if the petition had so alleged, the demurrer should have been overruled.

The case of McLaughlin v. Smith, 140 S. W. 248; Id., 105 Tex. 330, 148 S. W. 289, grew out of the action of the commissioners' court of Crosby county in subdividing that county into school districts in such manner as to give the Emma district 200 sections of the best lands in the county and to none of the other districts more than 35 sections of land. The petition alleged that the action of the district court was fraudulent, and was an abuse of their discretion. In answering a certified question from this court, Judge Brown said:

"A discussion of the authority of the district court to enforce performance of the duty of redistricting that county is justified alone by the use of the word 'may' in the law. The facts which give it the form of discretionary power are amply sufficient to authorize the action and judgment of the district judge, who did himself great credit by laying the strong hand of justice on a scheme to pervert official duty to selfish ends."

Quoting from 2 Lewis' Sutherland on Statutory Construction, § 636, he said in part:

"Permissive words in respect to courts or officers, are imperative in those cases in which the public or individuals have a right that the power so conferred be exercised. Such words, when used in the statute, will be construed as mandatory for the purpose of sustaining and enforcing the rights, but not for the purpose of creating a right or determining its character. They are peremptory when used to clothe a public officer with power to do an act which ought to be done for the sake of justice or which concerns the public interest or the rights of third persons. A direction contained in a statute, though couched in merely permissive language, will not be construed as leaving compliance optional when the good sense of the entire enactment requires its provisions to be deemed compulsory. Where a statute confers power upon a corporation to be exercised for the public good, the exercise of the power is not merely discretionary, but imperative, and the words 'power' and 'authority' in such case means duty and obligation."

[4] We recognize the rule which ordinarily forbids one court from interfering with the action of an inferior tribunal, so long as the latter is exercising its constitutional and statutory powers in a lawful manner and in matters calling for the exercise of discretion. In the instant case, the allegations showed that some of the applicants for the creation of the new district were required to send their children as far as seven miles, and many of them lived over four miles from the nearest schoolhouse; that district 5 was about to issue $1,000 in 20-year bonds. The plaintiffs' pleadings show that on account of streams, which were frequently so swollen they could not be crossed, the children of many of the applicants were denied the privilege of schools. Based upon these and other facts, the allegation is that the county school trustees had grossly abused their powers in denying the petition. If the action of those vested with authority, as in the McLaughlin-Smith Case, supra, in subdividing the county into inconvenient districts in the exercise of their discretion, results in such an injury as entitles the plaintiff to invoke the equitable powers of the district court to remedy the wrongs done, we

see no reason why a refusal of the board to act when due consideration for the welfare of a considerable part of the patrons of the school district demands it should not also give the complainants the right to apply to the courts for redress. The broad provision of the Constitution, quoted above in our opinion, vests the district court with authority, where the wrong complained of is the refusal to act as much as if it is caused by an affirmative act. They exercise judicial discretion in both instances.

The prayer in the McLaughlin v. Smith Case, supra, which was granted by the trial court, is in part that 24 sections of land included by the county commissioners in the Emma school district be taken out of that district and annexed to the Crosbyton district, and this action was approved by both this court and the Supreme Court. The effect of the decision in that case was a revision by the district court of a matter involving the exercise of discretion on the part of the commissioners' court. It was shown in the instant case that the petitioners lived in a sparsely settled, but rapidly growing, section of the country. According to article 2815, Vernon's Sayles' Civil Statutes, school districts which have issued bonds cannot be changed until the bonds have been paid. In the McLaughlin v. Smith Case, as in this, the commissioners were threatening to issue bonds for the construction of a schoolhouse, and the suit was brought to enjoin their issuance, as well as to reform the districts. If the lands owned by the petitioners herein were about to be burdened with a bond issue, which would be an incumbrance for 20 years, and under the statute cited prevent subsequent county trustees from redistricting during that period, we think "a strong and mischievous case of pressing necessity," giving the petitioners a right of action and entitling them to both a prohibitive and mandatory injunction, existed. Jeff Chaison Townsite Co. v. McFaddin, Weiss & Kyle Land Co., 56 Tex. Civ. App. 616, 121 S. W. 719. In the case cited, Judge Reese said:

" 'Many of the restrictions upon the use of mandatory injunctions have, in modern times, given way to a more liberal construction of the powers of a court of equity in the use of such form of injunctions. * * * Mandatory injunctions which require a party the performance of some act always, to some extent, anticipate the judgment of the court, and therefore should be granted with caution, and only when the necessity is great. But not only is the power to grant them undoubted, but the remedial and restraining power of a court of equity would be greatly impaired if such was not the rule.' Joyce on Injunctions, §§ 101–103, 1392; 1 High on Injunctions, § 2; 6 Pomeroy's Equity Jurisprudence, §§ 554–556; 5 Pomeroy's Equity Jurisprudence, § 510; Lumber Co. v. Lumber Co. (C. C.) 86 Fed. 528–533; New Iberia Rice Milling Co. v. Romero, 105 La. 439, 29 South. 876; Powhattan Coal & Coke Co. v. Ritz, 60 W. Va. 395, 56 S. E. 257, 9 L. R. A. (N. S.) 1228."

If appellee was entitled to have the new district carved out of the two already existing, under the Constitution and authorities cited, we think he was entitled to the prohibitive injunction, restraining the bond issue, and, finally, to a mandatory injunction, requiring the trustees to create the district.

[5] What has been said disposes of most of the questions raised by appellant on this appeal. It is insisted that section 4a, giving the district court supervisory control of the action of the county board of school trustees, is void, in that this purpose is not mentioned in the preamble to the bill. We understand the rule to be that when an act of the Legislature expresses the subject of the act fully in its title, it embraces and expresses all the means provided therein to accomplish the object, and therefore the specification in the body of the act of the means by which the object may be accomplished does not render the act obnoxious to the constitutional requirement that every law shall embrace but one subject, and that such subject shall be expressed in its title. Section 4a is merely a provision for carrying out and enforcing the duties enjoined upon the county officers mentioned in the act, and is not an attempt to enlarge the jurisdiction of the district court. Under the clause of the Constitution quoted above, we think the district court had the jurisdiction required to render the judgment in this case. Doeppenschmidt v. I. & G. N. Ry. Co., 100 Tex. 532, 101 S. W. 1080; Davey v. County of Galveston, 45 Tex. 291.

[6] The Act of 1915, p. 68, does not provide for the free transportation of children to and from schools in common school districts. The court did not err in overruling appellant's exception upon that ground.

We think the evidence is sufficient to sustain the judgment. The motion for rehearing is granted, and the judgment is affirmed.