## Cleveland, C., C. & St. L. Ry. Co. v. Walter Dunn.

1. CORPORATE LIMITS—*When Collaterally Involved.*—Corporate limits, when only collaterally involved, may be, *prima facie*, considered as embracing all territory over which the municipality exercises jurisdiction for municipal purposes.

2. SAME—*Presumptions as to Corporate Limits.*—Where the owner of a strip of land transferred it, or the possession of it, in some way not disclosed, to a city having power to extend its boundaries, and the city since such transfer devoted it to municipal uses and used and worked it as a street, the presumption is that the land has in some way been legally annexed to the city, and its boundaries extended accordingly.

3. MUNICIPALITIES—*Power to Disconnect Territory.*—A city can not, by an ordinance purporting to define its boundary lines, disconnect territory legally annexed; that can only be accomplished by a proceeding in compliance with the statute.

4. SAME—*Organization and Boundaries Not to be Determined in a Collateral Proceeding.*—The organization of a municipal corporation or the validity of the manner in which it has extended its boundaries, can not be questioned in a collateral proceeding. The conclusive presumption obtains, that the *de facto* city is a city *de jure*, and its *de facto* limits are its limits *de jure*.

Trespass, etc., for killing domestic animals. Appeal from the Circuit Court of Coles County; the Hon. FERDINAND BOOKWALTER, Judge, pre-

siding. Heard in this court at the May term, 1895. Affirmed. Opinion filed November 15, 1895. Opinion on rehearing filed January 18, 1896.

GEO. F. McNULTY, and NEAL & WILEY, attorneys for appellant.

JAMES W. CRAIG, attorney for appellee.

MR. JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

The judgment appealed from was for the value of a mare owned by appellee, which was killed by a train of the appellant company.

One count in the declaration charged the animal was struck and killed in the city of Charleston, by a train running at a higher rate of speed than was lawful under an ordinance of the city.

The only matter in dispute under this charge was whether the public crossing upon which the mare was standing when she was struck was in the city limits.

The train, or the greater portion of it, was in the city, but appellant contended the crossing was just ouside the limits.

The evidence produced by the appellee, plaintiff below, showed the city had for many years maintained, worked and used for city purposes, the street of which this crossing was a part, and had such possession and control of the same as cities usually have of such public ways.

Corporate limits, when, as here, only collaterally involved, may be *prima facie* considered as embracing all territory over which the city in fact exercised jurisdiction for city purposes. 5 Amer. & Eng. Corp. Cases, 326.

In rebuttal of this *prima facie* case the appellant company sought to prove, and as we think did prove, the western boundary line of the city, as originally organized, was the western line of section ten, and that the crossing in question, and the street of which it was a part, were located on a strip of ground taken out of section nine, just outside of said limits.

It, however, appeared from the same testimony the owner of said strip in section nine, in 1864, transferred it, or possession of it, in some way not disclosed, to the city, and

that the city had since that time devoted it to municipal use as a street, and worked and maintained a street upon it.

In such case the presumption is indulged that it was in some way legally annexed. Huff v. Lafayette, 106 Ind. 14.

The presumption could of course arise only in favor of a municipality vested with power to extend its boundaries.

We think the city of Champaign had requisite power in this respect.

The statute authorizing the annexation of territory to a city, in force in 1864, was as follows:

" The boundaries of any city incorporated under this act may include one mile square and any tract of land adjoining laid off into town lots and duly recorded, as required by law, and any tract of land adjoining said city, with the consent of the owner thereof, within the limits of one-half mile from the boundaries of said city." Scates, Treat & Black-well Comp., page 200, Sec. 7; Purple Statute, 1856, Vol. 1, Chap. 25, Sec. 7; Gross Statute, 1869, Chap. 25, Sec. 27.

The proof clearly shows the city, with the consent of the owner, entered into possession of the strip in 1864, and that it then in fact became a part of the city and has since so remained.

Power to legally annex it existed, and the presumption is that power was properly exercised and the city boundaries extended accordingly.

The city could not, by an ordinance purporting to define its boundary lines, disconnect territory legally annexed. That may only be accomplished by proceeding in compliance with the statute providing for such changes.

Liability was alleged in other counts of the declaration upon other grounds, and many questions relative thereto are raised and argued in the brief.

Counsel for appellant concede a *prima facie* case of negligence was made out under the count we have considered, if the crossing is in the city. There was nothing offered to rebut such *prima facie* liability.

Reference to other alleged errors is therefore unnecessary.

The judgment must be and is affirmed.

MR. JUSTICE BOGGS DELIVERED THE OPINION ON REHEARING.

This is an appeal from a judgment rendered in favor of the appellee for the value of a mare which was struck and killed by a train of the appellant company.

One count in the declaration charged the animal was in the city of Charleston when killed and that the train was running at a higher rate of speed than was lawful under an ordinance of the city.

The only matter in dispute under this count was whether the place where the mare stood when she was struck by the engine is in the limits of the city, in all other respects liability being fully established by the proof.

She was standing at the time upon a crossing of one of the streets of the city and the track of the railroad, but the appellant company contends the street is located upon a strip of ground adjoining, but outside the boundary line of the city, as established by the charter under which the city is organized, and that the strip has not been legally annexed to the city.

It was proven and without contradiction, the city obtained possession of the strip in question nearly thirty years ago, and then made a street upon it, and has since then worked and maintained the street and devoted it to public use as a street, and that it became and was a part of the city in point of fact.

The crossing in question was within the *de facto* limits of the city, and the regularity of its annexation can not be raised or determined in such an action as the one at bar, but only in a direct proceeding.

Nor can the court in a case such as the one at bar determine whether or not the city had lawfully exercised its power to extend its boundaries.

The general statutes of the State authorize the organization of cities, towns and villages, and empower such corporations to make additions to their territory, and here we find a *de facto* city.

The validity of its organization or of the manner in which it extended its boundaries can not be determined in such an action, but the conclusive presumption obtains that the *de*

*facto* city is a city *de jure* and its *de facto* limits are its limits *de jure.*

Corporate limits, when, as here, involved, are presumed to embrace all territory within the actual limits, and over which the city exercises jurisdiction for city purposes under claim of right to do so.

Speaking upon the point the Supreme Court of Iowa in the case of The City of Albia v. O'Hara, 5 Amer. & Eng. Corp. Cases, p. 326, said : " We can not try the legality of the proceeding (to annex territory) in a case like this. Whatever territory the city maintains jurisdiction over must be regarded, we think, a *de facto* corporate territory. If the right of jurisdiction is to be tested it should be done by a proceeding that would be binding upon all, and final."

This opinion is rendered upon a petition for a rehearing. The opinion upon which a rehearing was asked was open to the construction that the presumption a city has lawful right to exercise jurisdiction within its *de facto* limits, is *prima facie* only, and a rehearing was asked in order that counsel might be heard to direct the attention of the court to a special charter granted the city of Charleston by, as counsel contend, a " public act " of the General Assembly, certain clauses of which act counsel insist operate to overcome such *prima facie* presumption.

We observe this charter authorizes the extension of the corporate limits under certain circumstances, and the conclusive presumption arises it extended its limits in accordance with such provisions or under the provisions of the general statutes of the State authorizing the annexation of territory by any incorporated city, town or village, whether incorporated under the general law or by a special statute.

Entertaining the views as expressed in this opinion, that the validity of the act of the city in extending its *de facto* limits can not be raised or determined in this proceeding, we have denied the motion for a rehearing, and in order that no misapprehension may exist as to our judgment of the rule of law involved, have caused this opinion to be substituted for the former opinion in the case. Judgment affirmed.