## Missouri, Kansas & Texas Railway Company of Texas v. Lula Bratcher et al.

### Decided February 13, 1909.

#### 1.—Municipal Corporation—Validity—Collateral Attack.

When the creation of a municipal corporation is authorized by statute and a corporation has been organized under the color of such authority, its corporate existence cannot be inquired into by the courts in a collateral proceeding. The validity of the incorporation can only be determined in a suit brought for that purpose in the name of the State or by some individual under the authority of the State who has a special interest which is affected by the existence of the corporation.

#### 2.—Same—Evidence.

In proceedings to enforce ordinances of cities the illegality of the corporate existence cannot be shown to defeat a recovery; in such a collateral proceeding evidence that the corporation is acting as such is all that is required.

#### 3.—Evidence—City Ordinance—Territorial Limits of City.

Where a railway company was charged with negligence in running a train at a street crossing in a city at a rate of speed prohibited by an ordinance of the city, evidence that the city, in the exercise of jurisdiction over the territory in which the street and crossing were situated, was acting as a municipal corporation and under the color of law, was admissible and sufficient to let in evidence the ordinance and proof of its violation, though the passage of an ordinance annexing such territory in the manner required by statute was not shown.

#### 4.—Same.

Proof that a petition of certain citizens to add certain territory to the city was received and adopted by the city council; that since that time the city and its officers claimed that it was a part of the city and its officers exercised jurisdiction over it, levying taxes on property therein; and that men living in that territory had been regularly elected to serve in the city council, and all the functions of a city government were exercised therein, was sufficient to show that the city, in exercising jurisdiction over such territory acted as a municipal corporation and under color of law.

#### 5.—Railways—Negligence—Street Crossing—Obstructing View—Structures on Right of Way.

It is not negligence for a railway company to put on its right of way obstructions to the view of one approaching a crossing, whether the obstruction be placed there by the company for its own use, or by another by the company's permission to be used in connection with the business of the road; but it is merely a matter to be considered on the question whether there was negligence in the operation of a train at the crossing.

#### 6.—Same—Charge.

Where the deceased was killed by a train upon a railroad crossing, it was error to submit as a distinct ground of negligence upon which the plaintiff might recover, the maintenance by the railway company on its right of way of a cut and dump obstructing the view, when the uncontroverted evidence was that the cut and dump were six hundred feet from the crossing, and a train emerging from the cut could be seen that distance by one approaching the crossing as deceased was. Under such evidence the cut and dump could not have contributed to the accident.

#### 7.—Same—Flagman at Crossing—Negligence.

Railway companies are not required to keep a flagman or watchman at every crossing to give warning to travelers about to use the crossing, of the

danger from approaching trains; but if the location of a crossing and the circumstances surrounding it render it unusually dangerous, the failure to have a flagman there becomes a proper subject of inquiry upon the issue of culpable negligence in determining the liability of the company for damages for injuries inflicted upon one attempting to use the crossing.

Appeal from the District Court of Ellis County. Tried below before Hon. F. L. Hawkins.

*Coke, Miller & Coke* and *Groce & Eskridge,* for appellant.—No ordinance by the city council of the city of Waxahachie receiving as a part of said city territory which included the place where said G. S. Bratcher was killed having been shown or introduced, the court erred in permitting plaintiff's counsel to prove, over objections duly and seasonably made, facts tending, and intended, to show that such an ordinance had, in fact, been passed by the city council; and showing, and intended to show, that the city at the time said Bratcher was killed, actually exercised its municipal functions in territory which included the place where he was killed; and further erred in admittng in evidence, over objections, the "Speed Ordinance" of the city of Waxahachie.

It was not pretended that the place where Bratcher was killed was within the original limits of the city of Waxahachie, which are nowhere shown; but it was claimed that such place was in territory that had been brought into the city by addition. The city was incorporated under the general law, and any addition to its territory must have been in accordance with such law to have been effective, and it was incumbent on plaintiffs below to prove that this territory had been added to the city in the manner required by law.

Under our statutes additional territory can be received as part of a city incorporated under our general laws only by ordinance, after an affirmative vote of a majority of the particular territory; and when a municipality is empowered to do a particular thing by ordinance it can legally do it in no other way. Rev. Stats., art. 784; City of San Antonio v. Micklejohn, 89 Texas, 79; Mills v. City of San Antonio, 65 S. W., 1121; Noel v. City of San Antonio, 33 S. W., 263; Brand v. City of San Antonio, 37 S. W., 340; McQuillan Municipal Ordinances, sec. 2, p. 4.

*Y. D. Kemble* and *Farrar & Pierson,* for appellees.—Where it is shown that a municipal corporation is an acting de facto corporation over certain territory, it can not be collaterally attacked, and is subject to attack only through a direct proceeding by the State, and where the proof of such de facto corporation is shown by undisputed and uncontroverted evidence the court may assume the fact as such and admit its ordinances. City of El Paso v. Ruckman, 92 Texas, 86; Graham v. Greenville, 67 Texas, 62; Brennan v. City of Weatherford, 53 Texas, 330; White v. City of Quanah, 27 S. W., 839; Lamar v. State, 49 Texas Crim. App., 563; Dillon on Municipal Corporations, art. 418; Cooley's Const. Limitations, p. 311.

Talbot, Associate Justice.—This is a suit by Lula Bratcher,

the widow of G. S. Bratcher, deceased, in behalf of herself and minor children, to recover of the Missouri, Kansas & Texas Railway Company damages resulting to them from the death of said G. S. Bratcher, who was killed by one of the railway company's trains at an intersection of its railroad and a street-car line in the city of Waxahachie, in a collision between such train and a street car of which the said G. S. Bratcher was the driver. The grounds of negligence alleged and submitted to the jury were: (1) That the train causing the death of G. S. Bratcher was being run within the limits of the city of Waxahachie at a greater rate of speed than allowed by the city ordinance; (2) that appellant maintained on its right of way near the scene of the killing cuts and dumps and the tower house of an interlocking plant which obstructed the view and prevented the said G. S. Bratcher from seeing said train as it approached the street crossing; (3) that appellant failed to keep a flagman or watchman at the highway crossing where the killing occurred. The defendant plead the general issue and contributory negligence on the part of the deceased.

The first assignment of error is that the trial court erred in not directing the jury, at appellant's request, to return a verdict in its favor, because the evidence showed beyond controversy that the death of G. S. Bratcher was caused or contributed to by a want of ordinary care on his part, and hence the verdict of the jury must have been the result of prejudice. This assignment will be overruled. We do not regard the testimony as conclusively establishing contributory negligence on the part of the said G. S. Bratcher. It is only when the case is susceptible of but one just opinion that the trial judge is authorized to take it from the jury. (Joske v. Irvine, 91 Texas, 574.) After a careful consideration of all the testimony bearing upon the question, we think it is sufficient to require the submission of the issue to the jury and, as the case will be reversed and remanded for another trial, we shall refrain from further comment upon the testimony.

Appellant's second assignment of error is as follows: "No ordinance by the city council of the city of Waxahachie receiving as a part of said city territory which included the place where said G. S. Bratcher was killed having been shown or introduced, the court erred in permitting plaintiff's counsel to prove, over objections duly and seasonably made, facts tending and intended to show that such an ordinance had, in fact, been passed by the city council; and showing and intended to show that the city at the time said Bratcher was killed actually exercised its municipal functions in territory which included the place where he was killed; and further erred in admitting in evidence, over objections, the 'Speed Ordinance' of the city of Waxahachie, all as more fully shown by bill of exceptions reserved." The testimony offered and objected to was, in substance, as follows: J. W. Martin testified that he made a survey of territory which included the place where Bratcher was killed, for a contemplated addition to the city of Waxahachie. The city secretary testified that after search of the records of his office all that he was able to find having reference to what is known as "Trinity Addition" to Waxahachie, which included the street known as Grand Avenue (along which G. S. Bratcher was trav-

eling when killed), was what appeared on pages 262 and 263 of minute book F of the city council of the city of Waxahachie, which he produced and identified. These pages purported to show proceedings of a regular meeting of the city council of the city of Waxahachie held on August 5, 1902, which stated that "The following petition and ordinance was read and unanimously adopted;" that on that day came on to be heard the petition of H. P. Mizell and others asking that certain defined territory, and the inhabitants thereof, be included in and made a part of the city of Waxahachie, which petition, signatures and affidavits thereto are, in substance, as follows: then followed copy of petition by Mizell and eighteen others for the addition of territory included in Martin's survey to the city, with affidavits of Mizell and two other signers that the persons signing the petition constituted a majority of the qualified voters in the described territory; and a certificate by the mayor of the city that the affidavit had been filed before him and that he certified the same to the city council. J. T. Sullivan testified that he was an alderman of the city of Waxahachie and lived in the territory known as University Addition (same as Trinity Addition), and that such territory included the street known as Grand Avenue. J. M. Lancaster testified that he was an alderman of Waxahachie from 1900 to 1906; that he helped Martin make his survey and knew that an ordinance for the admission of the territory into the city was prepared, and he thought it was adopted by the council; that was his recollection, but he was not certain; that for three years subsequent to 1902 he, as alderman, was chairman of the street committee, and as such did a great deal of work on the streets in Trinity Addition; that from the date of the council meeting of August 5, 1902, the city government of Waxahachie had exercised its functions over the territory known as Trinity Addition as a part of the city. O. H. Chapman testified that as city attorney of Waxahachie he prepared several ordinances receiving territory into the city, and his recollection was that he prepared one receiving Trinity Addition, and that it was passed by the city council, but he knew nothing about whether such ordinance was ever signed by the mayor, or filed in the archives of the city government, except that such things when acted upon by the council were turned over to the city secretary and he was supposed to do the rest. The objections urged to this testimony were: (1) That there had been no proof of the original territorial limits of the city, and recitals in extension proceedings were insufficient to locate previous limits or to show that territory proposed to be added adjoined such limits; (2) that the record offered did not show an ordinance of the city council receiving the described territory as a part of the city; (3) that it was incompetent to thus prove the territorial limits of a city; that the law prescribed how additions to a city should be made and required record evidence thereof; that only by the production of such record evidence and proof of compliance with statutory requirements in all material respects could such extension be shown that no question of *de facto* government was involved in the case, and that the passage of a city ordinance, in so far as relevant to the issues in the case, could not be thus proved by parol.

There was no error in admitting this testimony, nor did the court

err in instructing the jury that the undisputed evidence showed that the accident which resulted in the death of G. S. Bratcher occurred within the corporate limits of the city of Waxahachie. In the case of City of El Paso v. Ruckman, 92 Texas, 86, Chief Justice Gaines, speaking for the court, says: "The rule is well established that when the creation of a public corporation, municipal or quasi-municipal, is authorized by statute and a corporation has been organized under the color of such authority, its corporate existence can not be inquired into by the courts in a collateral proceeding. The validity of the incorporation can only be determined in a suit brought for that purpose in the name of the State or by some individual under the authority of the State, who has a special interest which is affected by the existence of the corporation." It was shown that from the date of the council meeting held on August 5, 1902, the minutes of which stated that the petition of Mizell and others to add the territory surveyed by J. W. Martin to the city of Waxahachie was read and adopted, it had been continuously claimed by said city and its officers that said territory so surveyed and known as Trinity Addition was a part of the city; that the city and its officials had exercised jurisdiction over said territory, levying and collecting taxes on the property therein, including so much of appellant's railroad as was situated in said territory; that aldermen living in that territory had been elected regularly to serve in the city council, and that bonds based on property values including property within said territory had been issued by said city and all the functions of a city government exercised by it in such territory. If, therefore, it should be conceded that the testimony was insufficient to show the passage of an ordinance by the city council of Waxahachie, taking in the territory in question in compliance with the statute on that subject, still it abundantly and without dispute showed that said city, in the exercise of jurisdiction over said territory, was acting as a municipal corporation and under the color of law. In such case its corporate existence as to said territory or right to exercise its functions of government over it, at least in so far as the enforcement of its ordinances in said territory is concerned, can not be collaterally attacked. It is subject to attack only through a direct proceeding instituted by the State. Mr. Dillon in his work on Municipal Corporations, says: "In proceedings to enforce ordinances the illegality of the corporate organization can not be shown to defeat a recovery; in such a collateral proceeding, evidence that the corporation is acting as such is all that is required." In the case of Graham v. City of Greenville, 67 Texas, 62, a case in which the validity of the steps taken to annex certain territory to that city was called in question, the above statement of the law by Mr. Dillon was quoted with approval, and the further announcement made, "That if a municipality has been illegally constituted the State alone can take advantage of the fact in a proper proceeding instituted for the purpose of testing the validity of its charter." It follows that the court properly admitted in evidence the ordinance prohibiting the running of locomotives, engines and cars within the city limits of Waxahachie at a greater rate of speed than six miles per hour, and also correctly ruled on all other matters complained of in this assignment of error.

The fourth and fifth assignments of error assert that the court erred in submitting to the jury as distinct ground of negligence upon which plaintiffs might recover, the maintenance by appellant on its right of way of the cut and dump north of where the killing of G. S. Bratcher occurred, and the building and maintaining of the tower house on its right of way.  We think these assignments must be sustained.  The evidence, in our opinion, was not sufficient to authorize a finding by the jury that the cut and dump, referred to in the charge, so obstructed Bratcher's view of the approaching train as to have proximately caused his death; therefore such an issue should not, we think, have been submitted to the jury.  According to the practically uncontroverted evidence said cut and dump were six hundred feet north of the crossing where the accident occurred, and a train emerging from the cut going south toward the crossing could be seen by one approaching it, as Bratcher was, for that distance, unless it was partially obscured as it passed the tower house of the interlocking plant. It is very clear, we think, from the evidence that the cut and dump in nowise contributed to the accident resulting in Bratcher's death.

Nor could the existence of the tower house properly be considered as constituting a distinct or independent ground of recovery.  It could only be considered by the jury, with other circumstances, upon the question of the degree of care which the railway company was bound to exercise in running and managing its trains and giving warning of its approach.  Situated and maintained as the evidence shows it was in this case, it can not be an independent ground of recovery. (Missouri, K. & T. Ry. Co. v. Rogers, 91 Texas, 52; International & G. N. Ry. Co. v. Knight, 91 Texas, 660; Cordell v. New York Cent. Ry. Co., 70 N. Y., 119.)  In the case of Railway Co. v. Knight, *supra,* Chief Justice Gaines says: "In the case of the Missouri, Kansas & Texas Railway v. Rogers (91 Texas, 52), we held that it is not negligence for a railroad to put on its right of way obstructions to the view of one approaching a crossing, whether the obstruction be placed there by the railroad for its own use or by another by the railroad's permission, to be used in connection with the business of the road; but it is merely a matter to be considered on the question whether there was negligence in the operation of a train at the crossing." Again, he says: "A prudent man operating trains along the track of the defendant company may have exercised more care by reason of the obstructions than he would have exercised had they not existed. Otherwise the existence of the structure did not affect the case."  The tower house in question was the usual and ordinary structure necessary to the operation of the interlocking plant, a device to prevent trains from colliding or running into each other at the intersection of two roads—the intersection in this case being that of the Houston & Texas Central Railroad and that of appellant.  So that the erection and maintenance of this structure, under the rule announced in the cases cited, cannot on account of its obstructing the view of the railroad track, if it did obstruct it, "be deemed negligence either in law or in fact."

The sixth and last assignment of error complains of the court's action in submitting to the jury whether or not appellant was guilty of

negligence in failing to keep a flagman at the crossing where Bratcher was killed to warn persons about to pass over the street crossing of the approach of trains. We are of the opinion there was no error in this action of the court. It is true that railway companies are not required to keep a flagman or watchman at every crossing to give warning to travelers about to use the crossing of the danger of approaching trains; but if the location of a crossing and the circumstances surrounding it render it unusually dangerous, the failure to have a flagman there becomes a proper subject of inquiry and question of culpable negligence in determining the liability of the company for damages for injuries inflicted upon one attempting to pass over such crossing. (Central Texas & N. W. Ry. v. Gibson, 83 S. W., 862.) We are not prepared to say that the evidence was insufficient to justify the submission of the question in this case.

For the error in the charge, as indicated, the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*