## CITY OF HOUSTON v. LITTLE et al.[*] (No. 8346.)

(Court of Civil Appeals of Texas. Galveston. July 11, 1922. Rehearing Denied Oct. 5, 1922.)

1. **Statutes** &#x269A;225¼—**General School Act and provision of city charter in pari materia passed by same Legislature construed as if in same act.**

Where a general school act and a provision of a city charter are in pari materia and have been passed by the same Legislature, they must be construed as though embraced in the same act, and each must be given full force and effect.

2. **Schools and school districts** &#x269A;37(5)—**Ordinance annexing school territory to city held not invalid as an attempted amendment of charter.**

A city ordinance, providing for the enlargement of a school district by annexing territory outside the city limits, held not invalid as an attempted amendment of the city charter.

3. **Schools and school districts** &#x269A;37(5)—**City charter amendment, by ordinance annexing school territory, held valid.**

If an ordinance whereby a city enlarged a school district by annexing territory outside the city limits constituted an amendment to the city charter, held that such amendment was valid under the Home Rule Amendment to the Constitution, providing for amendment of city charters subject to limitations prescribed by the Legislature.

4. **Schools and school districts** &#x269A;22—**Annexation of school territory to city held not invalid as imposing new duties upon municipal officers.**

An annexation to a city school district of territory outside of the city limits held not invalid as imposing new duties on city officers without compensation, with respect to territory outside the city limits, contrary to the Home Rule Amendment to the Constitution.

5. **Schools and school districts** &#x269A;36—**City council held authorized to annex to city school district territory outside city limits.**

Under a city charter, providing that the city should constitute an independent school district subject to the general school laws of the state, and by authority of Vernon's Sayles' Ann. Civ. St. 1914, art. 2883, prescribing procedure for enlargement of school districts, and in view of article 2856, placing all school districts under the general laws, a city council held authorized to annex to the school district constituting the city the territory of a common school district located outside of the city limits.

&#x269A;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused November 22, 1922.

6. Schools and school districts ⟷40—Determination as to sufficiency of petition for annexation of school territory not subject to collateral attack.

Whether in a proceeding under Vernon's Sayles' Ann. Civ. St. 1914, art. 2883, for annexation by a city school district of territory outside the city limits whether the signers to the petition for an annexation constituted a majority of the taxpaying voters was for the determination of the city council, and its finding cannot be questioned in a collateral action.

7. Schools and school districts ⟷37(5)—Repeal of ordinance annexing school territory held not to detach added territory.

Repeal of a city ordinance, annexing to a city district territory outside of the city limits, *held* not an annulment of an ordinance of annexation, so as to detach the added territory, since proceedings to detach added territory must follow essential requirements of Vernon's Sayles' Ann. Civ. St. 1914, arts. 2856b, 2866.

8. Schools and school districts ⟷32—Repeal of ordinance, annexing territory to city district while having outstanding debts, held inoperative.

The repeal of a city ordinance, annexing school territory outside of the city limits to the city school district, *held* not to operate to detach the added territory, where the district had outstanding debts; Vernon's Sayles' Ann. Civ. St. 1914, art. 2856b, forbidding the diminution, change, or abolition of an independent school district while it has an outstanding debt.

9. Injunction ⟷133—District court held authorized to grant temporary mandatory injunction to compel performance of duties by school officers.

In a suit to compel city officials and the members of a city school board to perform their official school duties in territory lawfully annexed to the city, *held* that the district court had jurisdiction to grant a temporary mandatory injunction.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Suit by R. N. Little and others against the City of Houston and others. Judgment for plaintiffs, and the named defendant appeals. Affirmed.

Sewall Myer, W. Ray Scruggs, and T. J. Harris, all of Houston, for appellant.

Louis, Campbell & Nicholson, Maurice Hirsch, Allen Hanney, and Kenneth Krahl, all of Houston, for appellees.

LANE, J. R. N. Little, T. H. Dixon, W. W. Dedman, and 12 others, for themselves and others entitled to the relief sought, brought this suit against the city of Houston and its mayor and its other officials, and against A. S. Cleveland, C. H. Hurlock, and others, composing the board of school trustees for the city of Houston and the independent school district, the territory of which lies partly within the corporate limits of said city and partly within the boundaries which formerly composed common school district No. 25 of Harris county.

Plaintiffs alleged that the city of Houston is duly incorporated and operating under a charter granted to it by a special act of the Legislature of the state of Texas; that in the year of 1920 and prior to the 31st day of August of said year there had been legally created a common school district, designated as No. 25, in Harris county, Tex., within which public free schools were being maintained for the use and benefit of the children residing within said district; that plaintiffs and those for whose benefit they sue are citizens and residents of the territory formerly embraced in said common school district No. 25; that they have children residing with them in said territory who are entitled to attend the public free schools in said territory; that plaintiffs own real and personal property in said territory subject to taxation for school purposes and upon which taxes have been annually levied, assessed, and collected for such purposes; that prior to said last mentioned date common school district No. 25 had voted a school tax of 50 cents on the $100 valuation of the property within said district, and bonds of said district had been issued and were outstanding, and taxes were being regularly levied and collected within said district to provide a fund to pay the interest on said bonds, as well as to provide a sinking fund for the retirement of the same, and that prior to said date the city of Houston was, as now, an incorporated city, and had taken charge of the public free schools within its limits, and was on said date conducting, maintaining, and operating said schools, as it had been for a number of years, and said city at that time constituted an independent school district.

That on or about the ——— day of ———, 1920, a petition signed by a majority of the resident qualified voters of the territory within the boundaries of said common school district No. 25, which said territory adjoined the city of Houston, was presented to the city council of the city of Houston, praying that the corporate lines of said city be extended for school purposes only, so as to take in and embrace the territory then constituting said common school district 25; that upon the recommendation of a majority of the trustees of the public free schools of Houston, that is, the school board of the independent school district within the city of Houston, the city council of said city of Houston did, on or about the 7th day of September, 1920, pass and adopt an ordinance by which the city limits and corporate boundary lines of the city of Houston were extended for school purposes only, so as to include and take in the territory theretofore constituting common

school district No. 25, and that by the passage and adoption of said ordinance the territory formerly constituting common school district No. 25 was added to the Houston independent school district theretofore existing, and it became and is now a part of said independent school district; that after the passage of said ordinance the city of Houston and all of its officers, agents, and representatives, treated said territory as being within and a part of said city of Houston for school purposes, and within and a part of said independent school district of the city of Houston, and took over all the funds then in the hands of the duly constituted officers of said common school district No. 25, and asserted ownership and control thereof; and also took over all of the property, both real and personal, which had theretofore been owned, claimed, and used by said common school district for school purposes, and took charge, control, and supervision of the public free schools within said territory as the same had theretofore been conducted by said common school district, and thereafter conducted, maintained, and operated such schools, and began to assess, levy, and collect the school taxes within said new territory for and on behalf of the city of Houston and the independent school district thereof, the same being the school taxes regularly provided by law, as well as the special ad valorem tax which had theretofore been voted for the city of Houston by the voters thereof, and had also been voted for said annexed territory by the voters thereof, as aforesaid; the city of Houston and the voters thereof having theretofore voted a special ad valorem school tax of 50 cents on the $100 valuation of property within said city and school district, and said city of Houston and the independent school district thereof thereafter asserted ownership, control, and disposition of said school taxes as so collected from said newly annexed territory, as well as other portions of the city of Houston.

That thereafter, continuously, said city of Houston and said independent school district, and the officers thereof, also collected and received from the state of Texas, and said state, recognizing the validity of such annexation, paid to it and them the per capita apportionment of state school funds which was made for and based upon the children within the scholastic ages of and within said annexed territory, and used such money so collected for the benefit of the schools throughout the entire city of Houston as constituted for school purposes, and throughout said independent school district thereof; that as a part of the property belonging to said common school district which was taken over by said city of Houston, as aforesaid, there was $3,524.99 in cash and Liberty Bonds of the United States of the face value of $5,000, and War Savings Stamps of the United States of the face value of $5,000, as well as other property of great value not necessary to mention.

That by reason of the foregoing facts and conditions the territory heretofore embraced within and constituting said common school district No. 25 is now a part of the city of Houston, and within its lines and corporate limits for school purposes, and is within and a part of the said independent school district of and constituted by said city of Houston, and plaintiffs, as well as others similarly situated within said territory, for themselves and their children, are entitled to all of the benefits and privileges for school purposes which are accorded to the residents of other portions of the city of Houston, and are entitled to have said city of Houston and its officers function for school purposes within said territory, and continue to assess, collect, and use for school purposes the taxes legally assessed for school purposes within such territory, and continue to collect and receive from the state of Texas the per capita apportionment for school purposes based upon the scholastic census of children within said territory, and continue to maintain, conduct, and operate the public free schools within said territory as in other portions of the city of Houston, so that the children residing therein, including those of these defendants, may have the privilege and benefit of attendance therein and thereon, as they are legally entitled to.

That notwithstanding the facts and conditions which are hereinbefore set out, said city of Houston, and the duly constituted authorities of and for the city of Houston for both municipal and school purposes, including the defendants herein, who constitute the school trustees and school board of and for the city of Houston for school purposes, and of and for said independent school district thereof, are now questioning and denying the legality of the annexation to the city of Houston for school purposes, and to the independent school district thereof, of the territory which formerly constituted common school district No. 25, and are openly asserting and declaring that the territory of former school district No. 25 has never been properly and legally annexed thereto and taken within the corporate limits of the city of Houston for school purposes and of said independent school district, and is not a part thereof, and are failing and refusing to function for said territory for school purposes, and are failing and refusing to make the proper and necessary preparations, arrangements, and contracts for the maintenance, operation, and conduct of public free schools within said territory, and especially for the next common school term and for the city of Houston and said independent school district; and openly declare and assert that

they and said city of Houston and said independent school district, and the proper officers thereof, will not continue to function for school purposes within or for said territory formerly constituting school district No. 25, and will not maintain, operate, and conduct public free schools of and for the city of Houston and its independent school district within or for said territory for the benefit of plaintiffs and others similarly situated, and their said children, and will not make contracts, arrangements, or preparations for the employment of teachers, janitors, or other employés necessary in connection with the conduct of the public free schools within said territory, nor purchase or contract for fuel or any other supplies necessary in the conduct of said schools, and will not levy, assess, or collect taxes for school purposes for the city of Houston and the independent school district thereof, within said territory, or disburse the same for school purposes as and in the manner provided by law and the charter of the city of Houston, and will not do any act necessary or incident to or reasonably connected with the conduct, maintenance, and operation of public free schools within said territory by and for the city of Houston and said independent school district, and the assessment and collection of taxes thereon for school purposes and the proper disbursement of such taxes and other funds coming into their hands for school purposes within and for said territory; all of which things defendants have been and are now doing, or failing and refusing to do, willfully, arbitrarily, and fraudulently.

That the city of Houston and independent school district thereof, and the officers thereof, are bound and obligated to function within said territory for school purposes, and to do and perform all the things above referred to, which the defendants are asserting and declaring that they will not do with reference to said territory; that plaintiffs have reason to fear and believe, and do fear and believe, that the city of Houston and its said officers, including the defendants herein as well as said independent school district, and those of the defendants acting for it, will willfully and fraudulently continue to fail and refuse to function in behalf of said city of Houston and said independent school district thereof for school purposes or for said territory above referred to, and will continue to fail and refuse to provide for the conduct, maintenance, and operation of the public free schools of and for the city of Houston within said territory for the coming term, and to make such arrangements and contracts as may be reasonably necessary and proper thereto, and will fail and refuse to levy, assess, and collect school taxes within said territory for said city of Houston, and to receive from the state the per capita apportionment made by the state of Texas of

state and school funds to and for the children living within said territory and to the city of Houston and independent school district thereof for said children residing within such territory, and will fail and refuse to disburse, or cause to be disbursed, for school purposes in such territory the funds now within or which may come into their hands for such purposes, and will continue to fail and refuse to do any and all acts necessary for and connected with, or reasonably incident to the conduct, maintenance, and operation of public free schools of the city of Houston and the independent school district thereof within said territory, and especially for the coming term of such schools.

That it is necessary and essential to the proper conduct, maintenance, and operation of public free schools of the city of Houston, and of the independent school district thereof within said territory above mentioned, for the next ensuing school term, that contracts should soon be made with principals and teachers of and for said schools, and janitors obtained therefor, and for fuel and other supplies necessary and proper to be used in the conduct and maintenance of such schools; and that the school taxes already regularly assessed for the city of Houston and the independent school district thereof, for school purposes, against the property situated within said territory, should be collected, and that every remedy provided by law for the collection thereof should be invoked and exercised, and that such taxes for school purposes shall continue to be assessed and collected and disbursed for and with reference to said territory; all of which said city of Houston and said independent school district thereof, and the officers, agents, and representatives thereof, including the defendants herein, are deliberately, willfully and fraudulently failing and refusing to do, and will continue to fail and refuse to do.

That such acts and omissions upon the part of the city of Houston and said independent school district, and its officers, agents, and representatives, including the defendants herein, is causing and will cause great injury to the plaintiffs, and to all others similarly situated, and is depriving and will deprive them of their legal rights, which injury is and will be irreparable and impossible to measure in damages; and plaintiffs have no adequate remedy at law.

The prayer of the plaintiffs is as follows:

"Premises considered, plaintiffs pray that a temporary injunction and restraining order may be immediately issued herein, enjoining and restraining the defendant city of Houston, and independent school district thereof, and its officers, agents, and representatives, including the other defendants herein, and the defendants constituting the school board for said city of Houston, and being the school trustees for the schools of said city and said independent school district thereof and therein, from failing

and refusing to function for school purposes within the territory heretofore constituting common school district No. 25 at the time of the passage of the ordinance purporting to take the same into the city of Houston for school purposes, in the same manner and to the same extent that they may function for school purposes in other portions of said city and independent school district, and from failing and refusing to do all things which may be reasonably necessary and proper, and within such time and such manner as may be reasonably necessary and proper for the conduct, maintenance, and operation of the public free schools of the city of Houston and the independent school district thereof within and for said territory heretofore referred to for the remainder of the present ensuing school term, and for next school term and thereafter; and enjoining and restraining said defendants from discontinuing the conduct, operation, and maintenance within and for said territory of the public free schools of and for the city of Houston and the independent school district thereof, for the remainder of the present ensuing school term thereof, and from doing such things as will interfere with or injuriously affect or result in the cessation and discontinuance of the conduct, maintenance, and operation of said schools in said territory, and from failing and refusing to do such things and to make and carry out contract for teachers, janitors, fuel, and school supplies, and to make such other arrangements as may be reasonably necessary and proper for the present and future conduct, maintenance, and operation of said schools in said territory, and from failing and refusing to collect and use all reasonable and lawful means to collect all school taxes heretofore assessed by and for the city of Houston, and independent school district thereof, within and against the property in said territory heretofore referred to, and from failing and refusing to currently assess, levy, and collect such school taxes against the property within said territory as may be proper and lawful, and from failing and refusing to collect and receive from the state of Texas the per capita apportionment of state school funds as may be made for the use and benefit of the children residing within said territory, or to cause to be disbursed such proportion of said taxes and school funds as may be proper, lawful, and necessary for the purpose of conducting and maintaining such schools within and for said territory, and from disbursing, expending, and paying out all of said funds which may now be in or hereafter come into their hands for school purposes, for the conduct and maintenance of schools in and for other portions of said city of Houston and independent school district thereof than the territory heretofore referred to, and to the exclusion of said territory and the schools thereof and therefor.

"That citation may issue to defendants, and that upon final hearing it may be adjudicated that the territory constituting common school district within the terms of the ordinance last above referred to constitutes a part of the city of Houston for school purposes, and a part of the independent school district thereof, and that said temporary injunction may be made permanent and continued in full force and effect, and that plaintiff may have order and writ of mandamus to the defendants and their successors in office, commanding them to continue to maintain, operate, and conduct the public free schools of the city of Houston and said independent school district within said territory, and make such provision and enter into such contracts as may be reasonably necessary for and incident to the maintenance, conduct, and operation of such schools, and commanding that school taxes proper to be levied and assessed within such territory shall be levied, assessed, and collected therein by and on the part of said city of Houston and independent school district, and to receive from the state of Texas and its proper officers the per capita apportionment of said school funds as may be made and payable for the children of said territory, and to do any and all acts that may be necessary and proper for the maintenance and conduct of said schools as a part of the school system of the city of Houston and the independent school district thereof, and to consider and treat the said territory as a part of and within the corporate lines of the city of Houston for school purposes, and within said independent school district; and that plaintiffs may have such other and further relief as they may be entitled to, both general and special, at law or in equity, and as in duty bound will ever pray."

The petition was duly verified by plaintiff R. N. Little.

Defendants answered by general demurrer, general denial, and by specially pleading: (1) That the ordinance by which the boundaries of the independent school district, which was theretofore wholly within the corporate limits of the city of Houston, was extended so as to take in the territory constituting common school district No. 25, was on the 11th day of May, 1922, repealed, and that by such repeal, common school district No. 25 was divorced from the independent school district of the city of Houston, and is no longer a part thereof, if it ever was any such part; (2) that the petition upon which the ordinance was passed, annexing the common school district No. 25 to independent school district of the city of Houston, did not contain the names of a majority of the resident qualified voters of common school district No. 25, as is required by law, and therefore said ordinance was void, and did not have the effect to extend the limits of said independent school district so as to embrace common school district No. 25; (3) that the boundaries of the city of Houston are fixed and determined by the provisions of the charter of said city, and cannot be extended by ordinance, as was attempted by the ordinance passed September 7, 1920; (4) that said ordinance of September 7, 1920, is void, because it attempts to confer upon the city and its officers the power to levy and collect taxes on property not in the corporate boundaries of said city; (5) that said ordinance is void because it requires the officers of said city to perform services outside of the city, in violation of the city charter, which pro-

vides that said officers shall devote all their time to conducting the affairs of said city.

Defendant made several other allegations, attacking the validity of the ordinance of September 7, 1920; but, in view of the disposition we shall make of the attack upon the validity of the school district created by said ordinance, we will not repeat them here.

The defendant prayed that the ordinance of September 7, 1920, and all proceedings attempting to annex common school district No. 25 to independent school district of the city of Houston be declared void, and the relief prayed for by plaintiffs be denied. This answer was duly verified.

By their supplemental petition the plaintiffs demurred generally to the answer of the defendants, and specially excepted to so much of said answer as attacked the validity of the ordinance passed by the city council of the city of Houston on the 7th day of September, 1920, whereby the boundaries of independent school district of said city were extended so as to include the territory formerly constituting common school district No. 25, upon the grounds that the petition upon which said ordinance was passed was not signed by a majority of the resident qualified voters of said common school district No. 25. They also specially excepted to so much of said answer as set up as a defense the ordinance by which it was sought to repeal the ordinance extending the boundaries of independent school district of the city of Houston, for the reason that the repealing ordinance could not and did not have the effect to divorce the territory added by the former ordinance from said Houston independent school district, and therefore presents no defense to plaintiffs' suit. They also pleaded a general denial to the allegations of defendants' answer.

The trial court sustained the plaintiffs' special exception to that portion of defendants' answer attacking the ordinance passed September 7, 1920, upon the alleged ground that the petition therefor was not signed by a majority of the qualified voters of common school district No. 25, declined to hear evidence, and rendered judgment granting a mandatory injunction as prayed for by plaintiffs pending suit. From the judgment so rendered the city of Houston has appealed.

The only questions presented for our decision are as follows:

(1) Could the territory formerly constituting common school district 25 be lawfully annexed to the city of Houston for school purposes only?

(2) If such annexation could be lawfully made, could the defendants raise the collateral question that such annexation was not properly made by the passage of the ordinance of September 7, 1920, because the petition presented to the city council praying therefor was not signed by a majority of the resident qualified voters of the territory to be annexed, notwithstanding said ordinance recited that said petition had been signed by a majority of said voters, and notwithstanding the fact that all interested parties, including the state of Texas, had continuously, since the passage of said ordinance, recognized and treated such annexed territory as being within the boundaries constituting Houston independent school district, until the recent acts of the defendants, complained of by the plaintiffs in this suit?

(3) Assuming that such annexation was lawfully and properly made, and had thereafter been so recognized and treated by the city of Houston, its officers, and the state of Texas, did the ordinance passed by the city of Houston, on the 11th day of May, 1922, after this suit was filed, have the effect of setting aside and annulling the effect of the ordinance of September 7, 1920, by which the territory of common school district No. 25 was annexed to the Houston school district? In other words, could the city council by the passage of the ordinance of May, 1922, disconnect the territory formerly constituting common school district 25 from the district as constituted by the ordinance passed September 7, 1920?

(4) Assuming that said territory was lawfully annexed, and that it now constitutes a part of Houston independent school district, and that the defendants, who are in control of the school affairs of said city and of said independent school district, were willfully, arbitrarily, and fraudulently failing and refusing to function for school purposes within and for said annexed territory, and for the people thereof, and that they were threatening to continue such failure and refusal, as alleged by plaintiffs, did the trial court have jurisdiction to enter the order of temporary mandatory injunction, requiring the defendants to perform their official school duties, and to function for school purposes within the annexed territory, and for the people residing in said territory?

[1] We shall take up and dispose of the questions of law above stated, in their order.

In 1905 the Legislature of the state of Texas passed an amended charter for the city of Houston (Sp. Laws 1905, p. 131), section 14, article 2, of which reads as follows:

"The city of Houston shall constitute an independent school district, *subject to the general school laws of the state*, except where in conflict with this act, and the city shall have authority to levy and collect taxes and appropriate funds for the support and maintenance of the public schools within its limits."

Thereafter, at the same session (Laws 1905, c. 124), the Legislature passed a general law providing for a complete system of public free schools in Texas. Section 144 of

that act, which is now article 2871, Vernon's Civil Statutes 1914, is as follows:

"*General Laws shall Govern.*—Schools thus organized and provided for by incorporated cities and towns shall be subject to the general laws, so far as the same are applicable; but each city or town having control of schools within its limits shall constitute *a separate school district,* and may provide for the organization of schools and the appropriation of its school funds in such manner as may be best suited to its population and condition."

Section 148 of said school law, now article 2883, Vernon's Statutes, is as follows:

"Any city or town that has taken charge of the public free schools within its limits, or that shall hereafter take charge of the same, may, by ordinance, extend its corporation lines for school purposes only, on a petition signed by a majority of the resident qualified voters of the territory, which is to be taken into said city or town for school purposes only, and recommended by a majority vote of the trustees of the public free schools of said city or town. * * * The added territory shall not affect the city's debts or business relations in any manner whatever, except for school purposes as provided above. The officers whose duty it is to assess and collect school taxes within the city limits shall also assess and collect school taxes within the territory added for school purposes as herein provided."

The Legislature of 1909 added to said school law, section 154a, now article 2856, Vernon's Statutes, reading as follows:

"All school districts, heretofore provided for by special act of the Legislature, are placed under the general laws relating to incorporated school districts, and all provisions of any and all such special acts in conflict with the general laws are hereby specifically repealed, except in so far as those acts relate to the boundaries established by the acts incorporating such districts. * * *"

Section 14, article 2, of the charter of the city of Houston, and the General School Act of 1905, are in pari materia, and, having been passed by the same Legislature, must, under the general rules of statutory construction, be construed as though embraced in the same act, and each must be given full force and effect. It will be noted that the Legislature in creating the independent school district of the city of Houston, by said section of the charter, created the same "*subject to the general school laws of the state, except where in conflict with this act.*" Such school district then necessarily became subject to the provisions of the General School Act passed by the same Legislature.

Section 148 of that act, providing how "*any* city or town" which had taken charge of its public free schools might thereafter take in additional territory for school purposes only, is not in conflict with the provision of the city charter, but simply enlarges the power of the city and of the inde-

pendent school district thereof, as given by said charter. The same rule applies here as was applied by the Supreme Court in the case of Werner v. City of Galveston, 72 Tex. 28, 7 S. W. 726, 12 S. W. 159. The court was there construing the general act of the Legislature providing that cities and towns might assume control of the public schools thereof, and it was contended that such general law was in conflict with the provisions of the special charter of the city of Galveston, and therefore inapplicable to that city, and the court in answering such contention said:

"It amends no section of the charter of the city, *but merely adds to the powers already granted to the cities and towns of the state an authority not previously conferred.*"

The city charter contained no provision inhibiting the enlargement of the independent school district of the city of Houston in the manner provided by the School Act of 1905, and, such school district having been created subject to the general school laws of the state, except where in conflict with said charter, section 148 of the School Act simply provided a method by which the school district created by the city charter might be enlarged.

Section 14 of the charter had no greater effect than if the Legislature, instead of having placed such provision in the charter, had passed a separate special act constituting the territory of the city of Houston an independent school district. If the Legislature had created the independent school district of the city of Houston by a separate special act, instead of by section 14 of the charter, the same would have, of course, been subject to the general laws relating to such districts. The Legislature, however, saw fit to create such independent school district by a provision of such charter, and to eliminate any doubt that the same was to be subject to the general laws of the state expressly provided therein that such should be the case, "except where in conflict with this act."

The dual capacity of the city of Houston, under said charter and the school laws of the state, as a city on the one hand and as an independent school district on the other, must be kept clearly in mind, and the distinction between the city of Houston for municipal purposes and the independent school district of the city of Houston must at all times be recognized.

The dual capacity, and the distinction between the two entities is made clear in the decision of the Supreme Court in the case of city of Rockdale v. Cureton, Attorney General (Tex. Sup.) 229 S. W. 852. The court, speaking through Chief Justice Phillips, upon that question said:

"The Constitution (section 10 of article 11) has empowered the Legislature to constitute

any town or city an independent school district. The Legislature, therefore, had the power to say, as it has done in article 2871, that a city or town taking over the control of its public schools shall constitute such a district. There may thus be conferred upon a city a dual character, and with such character, dual powers. There could have been no purpose in authorizing the creation of towns and cities as independent school districts—a recognized separate class of municipal corporations with individual powers, unless in that capacity they were to have the powers of such districts.

"The city of Rockdale had lawfully acquired this dual character. It had its powers as strictly a municipality, to be exercised for strictly municipal purposes; and it had its powers as a duly constituted independent school district. The two are not to be confused.

"It is plain that these bonds were voted and are proposed to be issued as the bonds, of the city as a school district. Their validity is accordingly to be tested by the powers possessed by the city in that capacity."

This dual entity and capacity was also shown in the cases of Davis v. Payne (Tex. Civ. App.) 179 S. W. 62, and Moerschell v. City of Eagle Lake (Tex. Civ. App.) 236 S. W. 999. See, also, article 2815, Vernon's Statutes, and City of Eagle Lake v. Lakeside Sugar Refining Co. (Tex. Civ. App.) 144 S. W. 709.

[2, 3] Counsel for the city contend that the ordinance of annexation under consideration was an attempted amendment to the charter of the city of Houston, and, not having been proceeded with in the manner provided by the Home Rule Amendment to the Constitution (article 11, § 5), and the Enabling Act passed by the Legislature, was void. We think counsel lose sight of the distinction between the municipality of the city of Houston and the independent school district of the city of Houston, above referred to. We do not think it can be held that the enlargement of the territory of the school district constituted an amendment, or attempted amendment, to the charter of the municipality of the city of Houston. Conceding, however, that the effect of such annexation was an amendment of the charter of the city of Houston, still we think it was valid under the Home Rule Amendment. The Home Rule Amendment provides that city charters may be amended "subject to such limitations as may be prescribed by the Legislature," the only exception thereto being that no charter shall be inconsistent with the Constitution, or of the general laws of the state, and that no city charter shall be amended oftener than every two years. If said annexation be considered as an amendment of the charter, still it was done in accordance with the general laws of the state and by the method prescribed by the Legislature, so that it must be considered as an amendment, if at all in accordance with the limitations prescribed by the Legislature, and must be upheld as valid.

[4] Counsel for the city also contend that the annexation was invalid because it imposed new duties upon the officers of the city of Houston without compensation therefor, and with respect to territory outside of the city limits of the city of Houston, and contrary to the provision of the city charter that the officers of said city shall devote all of their time to the business of said city. The Home Rule Amendment to the Constitution provides, among other things, that no city charter shall contain any provision inconsistent with the general laws enacted by the Legislature of the state. The city charter provides that the officers of the city of Houston shall levy and collect taxes, and appropriate funds for the maintenance of the public schools within said independent school district, and section 148 of the School Act of 1905 (article 2883) which must be construed in connection with the city charter, provides as follows:

"The officers whose duty it is to assess and collect school taxes within the city limits shall also assess and collect school taxes within the territory added for school purposes as herein provided."

[5] Section 165 of the same act (article 2881) provides that where a city or town has taken charge of its schools the city assessor and collector of taxes shall assess and collect the taxes of said school district for school purposes. It is further provided by the same section that such assessor and collector shall receive no other compensation for collecting school taxes than the compensation paid him for assessing and collecting the city taxes. The charter of the city of Houston expressly provides that the various officers of the city shall render various services to and in connection with the independent school district of the city of Houston created by such charter. The city of Houston is in no position to insist that it is not governed by the provisions of the general school laws in the conduct of its schools, because it must look almost exclusively to such laws for authority and method for the conduct of the school affairs of the Houston independent school district. Sections 14 and 14a of article 2 of the city charter are the only laws relating to school affairs, and they provide only for the appointment of school trustees by the mayor. We think it is clear that the city council of the city of Houston, acting by authority of article 2883, Vernon's Statutes, had the right to annex the territory of common school district 25, and that their act in so annexing said territory was not an amendment of the city charter, nor was it void.

[6] With reference to the second question: At the hearing before the trial court the appellants undertook to question the validity of such annexation upon the ground that the petition upon which the same was based was not signed by a majority of the resident tax-

paying voters of the territory sought to be annexed. The plaintiffs urged a special exception to that portion of the defendants' answer, upon the ground that the same constituted a collateral attack upon such annexation, and could not be urged in this proceeding, but could only be urged in a direct proceeding in the nature of quo warranto instituted by the state of Texas, or to which the state of Texas was a party, raising such question. The special exception was sustained by the court, and the defendants are now complaining of that ruling. Whether the signers to the petition constituted a majority of the taxpaying voters was a matter to be determined by the city council, and their finding thereon, in passing the ordinance, cannot be called in question in a collateral action. Crabb v. Celeste Independent School District (Tex. Civ. App.) 132 S. W. 892, paragraph 3, second column, citing Scarbrough v. Eubank, 93 Tex. 106, 53 S. W. 573.

If the territory in question was added irregularly to the Houston independent school district by the passage of the ordinance of September 7, 1920, but was thereafter recognized as a part of said district by the proper officers of the city of Houston and the state of Texas, it became a part of said independent school district, and the district as then constituted became a de facto school district of Harris county and the state of Texas, and in its validity could not be attacked by the city of Houston or by any individual. Since the district had been formed under color of law, it was valid for the purposes for which it was formed until set aside by a direct proceeding by the state or on the relation of the state, or by proceeding by quo warranto. The governing body and proper officials of the city of Houston and its schools having made adjudication as to the existence of certain facts in the formation of said district, the judgment of no individual or of any one short of the state should be allowed to be substituted for that of the governing body of the city. Ex parte Koen, 58 Tex. Cr. R. 279, 125 S. W. 401; State v. Dunson, 71 Tex. 65, 9 S. W. 103; Cohen v. City of Houston (Tex. Civ. App.) 176 S. W. 809; Cohen v. City of Houston (Tex. Civ. App.) 205 S. W. 757; City of Carthage v. Burton, 51 Tex. Civ. App. 195, 111 S. W. 440; Railway v. Bratcher, 54 Tex. Civ. App. 10, 118 S. W. 1091; Short v. Gouger (Tex. Civ. App.) 130 S. W. 267; Graham v. Greenville, 67 Tex. 62, 2 S. W. 742; El Paso v. Ruckman, 92 Tex. 86, 46 S. W. 25; Parker v. Harris County Drainage District, No. 2 (Tex. Civ. App.) 148 S. W. 351; Brennan et al. v. City of Wetherford, 53 Tex. 330, 37 Am. St. Rep. 758; Crabb v. Celeste Independent School District, 105 Tex. 197, 146 S. W. 528, Ann. Cas. 1915B, 1146; State v. Bradshaw (Tex. Civ. App.) 228 S. W. 658; Town of Henderson v. Davis, 106 N. C. 88, 11 S. E. 573; Town of Searcy

v. Yarnell, 47 Ark. 269, 1 S. W. 319; State v. Fuller, 96 Mo. 165, 9 S. W. 583; Worley v. Harris, 82 Ind. 493; State v. Carr, 5 N. H. 367; Campbell v. Wainwright, 50 N. J. Law, 555, 14 Atl. 603; Mendenhall v. Burton, 42 Kan. 570, 22 Pac. 558; Austrian v. Guy (C. C.) 21 Fed. 500; Mendota v. Thompson, 20 Ill. 200; Kettering v. Jacksonville, 50 Ill. 39; Bird v. Perkins, 33 Mich. 28.

In case of Ex parte Koen it is held that when there is a tribunal created by law to pass on a given state of facts, the findings or conclusions of such tribunal cannot be questioned collaterally, and, even if a municipality has been illegally constituted, the state alone can take advantage of that fact in a proper proceeding. Ex parte Koen, 58 Tex. Cr. R. 279, 125 S. W. 401.

Quo warranto used to test the existence of city. State v. Dunson, 71 Tex. 65, 9 S. W. 103.

In the case of Cohen v. City of Houston it is held that, even if corporate limits are unlawfully extended, this cannot be attacked in a collateral proceeding, but only in a direct action by the state. Cohen v. City of Houston (Tex. Civ. App.) 176 S. W. 809.

"Where a municipal corporation exercises its functions of government under color of law over territory in a certain addition, its right to do so cannot be collaterally attacked." Railway v. Bratcher, 54 Tex. Civ. App. 10, 118 S. W. 1091.

"Municipal boundaries as shown by the proper records are not attackable collaterally." Short v. Gouger (Tex. Civ. App.) 130 S. W. 267.

"When the law provided for the creation of a drainage district by any public body, as by the county commissioners' court, the validity of the district created by it cannot be collaterally attacked, but may be attacked only directly by quo warranto." Parker v. Harris County Drainage District No. 2 (Tex. Civ. App.) 148 S. W. 351.

In the case of El Paso v. Ruckman it is said that:

"The rule is well established that when the creation of a public corporation, municipal or quasi municipal, is authorized by statute, and a corporation has been organized under the color of said authority, its corporate existence cannot be inquired into by the courts in a collateral proceeding by a taxpayer defending in a tax suit." El Paso v. Ruckman, 92 Tex. 86, 46 S. W. 25.

In the case of Crabb v. Celeste Independent School District, it is held:

"The existence and extent of quasi municipal corporation such as an independent school district, organized and acting under color of law, can only be determined in a suit in the name of the state or by some one under its authority having a special interest affected by its existence. Thus, taxpayers in territory added to such district under color of proceedings provided by law could not question, in a

private action, the regularity of such proceedings." Crabb v. Celeste Independent School District, 105 Tex. 194, 146 S. W. 528, Ann. Cas. 1915B, 1146.

[7] We now come to a discussion of the third question: Did the ordinance passed by the city council on the 11th day of May, 1922, have the effect to repeal and annul the ordinance of September 7, 1920? Our answer to this question must be in the negative. Proceedings to detach added territory, as in the present case, to be valid, must, in substance, follow essential requirements of the law authorizing such action. McQuillin on Munic. Corp. § 281. "A municipal corporation cannot disconnect territory which has been legally annexed, by an ordinance purporting to define its boundaries. That can only be done by proceedings in compliance with the statutes governing such matter." Cleveland Ry. Co. v. Dunn, 61 Ill. App. 227. "If the * * * law applicable, prescribes the mode in which corporate boundaries may be changed, of course such mode must be observed.". Westport v. Kansas City, 103 Mo. 141, 15 S. W. 68.

We know of no law which authorized the city council to diminish the territory of the school district in question by the passage of an ordinance, as it attempted to do. Articles 2856b and 2866, Vernon's Statutes, provide a method for changing the boundaries of school districts, and we think the method there provided must be followed.

[8] Another reason why the district as formed by the ordinance of September 7, 1920, could not be changed as attempted is that by article 2856b of Vernon's Sayles' Statutes, it is provided that no independent school district shall be diminished, changed, or abolished while it has an outstanding debt, either of bonds or otherwise, against it. It appears from the verified supplemental petition of plaintiffs that the school district in question, at the time of the passage of repealing ordinance of May 11, 1922, had outstanding debts.

[9] We think the trial judge had the power to grant the temporary mandatory injunction. McLaughlin v. Smith (Tex. Civ. App.) 140 S. W. 248; Id., 105 Tex. 333, 148 S. W. 288; Jennings v. Carson (Tex. Civ. App.) 184 S. W. 564; Wells v. Bruner (Tex. Civ. App.) 204 S. W. 364; Donna Independent School District v. Bank (Tex. Civ. App.) 227 S. W. 976; Fruit Disp. Co. v. Rainey (Tex. Sup.) 232 S. W. 282.

In writing the foregoing opinion we have been greatly aided by the able brief of appellees, from which we have liberally copied, as shown above.

Having reached the conclusions hereinbefore expressed, the judgment is affirmed.

Affirmed.

---

⊗≈For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes